Mr. Junior M. RICKETTS
    Petitioner,

: 07 CV 0133 /AR
: Civil Action No.

: Immigration File No: A 27-024-434

       v.

Charles MULE,
Facilities Director, Buffalo Federal
Detention Facility;
David VENTURELLA,
Director, Post-Order Detention Unit,
Bureau of Immigration and Customs
Enforcement;
Peter J. SMITH,
District Director, U.S. Citizenship and
Immigration Services:
Alberto GONZALES,
Attorney General of the United States

    Respondent

---

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C.§ 2241

Petitioner, Junior M. Ricketts, hereby respectfully petitions this Honorable Court for a writ of habeas corpus to remedy his unlawful detention, and to enjoin Respondents from refusing to release him pursuant to a decision entered by the Immigration Judge on November 18, 1999, and upheld by the Board of Immigration Appeals on March 8, 2000. As well as, the constitutionality of the

underlying removal order. In support of this petition and complaint for injunctive relief, Petitioner states the following questions:

## QUESTIONS PRESENTED

I.   Whether an alleged alien whose claim of United States Nationality that is not recognized by the Bureau of Immigration and Custom Enforcement can be indefinitely detained in their custody.

II.  Whether evidence that were used in violation of Petitioner's Constitutional Due process rights were "clear and convincing" evidence that Petitioner is an alien.

## CUSTODY

1. Petitioner is in the physical custody of the Department of Homeland Security, Bureau of Immigration and Custom Enforcement (hereinafter "BICE"), District Director of Buffalo, New York. He is detained at the Buffalo Federal Detention Center, 4250 Federal Drive, Batavia, New York 14020. Petitioner is under the direct control of Respondents and their agents.

## JURISDICTION AND VENUE

2. This action arises under the Constitution of the United States, and the Immigration and Nationality Act (hereinafter "INA"), 8 U.S.C. § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

3. This Court has jurisdiction under 28 U.S.C. § 2241( c)(1) and (3), Art.1 § 9, cl. 2 of the United States Constitution (hereinafter "Suspension Clause'), and 28 U.S.C. § 1331, as Petitioner is presently under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States and is seeking relief from his prolonged detention. See e.g. INS v St. Cyr, 533 U.S. 289 (2001); Sossoko v. Rocha, 412 F.3d 1021, 1033 (9th Cir. 2005) (holding that the Real ID ACT does not preclude habeas jurisdiction over challenges to detention); Calcano-Martinez v. INS 533 U.S. 348 (2001); Henderson v. Reno, 157 F.3d 106, 122 (2d Cir. 1998) cert. Denied sub. Nom. This Honorable Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C § 702, the APA, the Declaratory Judgment Act, 28 U.S.C. §2201 et seq and All Writs Act, 28 U.S.C. § 1651.

4. Pursuant to Branden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-500 (1973), and venue lies in the United States District Court for the Western District of New York, the judicial district in which Respondent District Director for Buffalo, Peter J. SMITH, is located. See 8 U.S.C. §1391(e).

## PARTIES

5. Petitioner is a native and citizen of United States of America. Petitioner was recently taken into BICE custody on September 05, 2006, and has remained in BICE custody continuously since that date. Petitioner final order of removal was alleged reinstated by BICE on April 22, 2005, in violation of 8 C.F.R §§ 241.8(b) and 103.5a(c)(2)(i); thereby, the reinstated decision became final on September 05, 2006.

6. Respondent Charles MULE is the Facilities Director for the Buffalo Federal Detention Facility in Batavia, New York, and is Petitioner's immediate custodian.

7. Respondent David VENTURELLA is the Director of the Headquarters Post-Order Detention Unit (HQPDU), Bureau of Immigration and Customs Enforcement. The Post-Order Detention Unit is responsible for making the final custody decision for aliens with final order of removal. As such, Mr. VENTURELLA is the custodian of Petitioner.

8. Respondent Peter J. SMITH is the District Director of the U.S. Citizenship and Immigration Service Buffalo District and is the Petitioner's immediate custodian.

9. Respondent Alberto GONZALES is the Attorney General of the United States and is responsible for the implementation and enforcement of the Immigration

and Nationality Act. As such he has ultimate custodial authority over Petitioner.

## EXHAUSTION OF REMEDIES

10. Petitioner has exhausted any and all administrative remedies to the extent required by law, and his only remedy is by way of this judicial.

## FACTUAL ALLEGATIONS

11. The Petitioner was convicted on January 9, 1995, of illegal entry and harboring aliens in the United States in violation of 8 U.S.C. §1324(a)(1)(D). The Petitioner was also convicted embezzlement of funds from a federal funded government agency, fraud and misuse of an alien registration card, and illicit transportation of a minor with the intend to engage in sexual activity in violation of 8 U.S.C. §§ 666(a)(1)(A), 1546, and 2423. As a result of these convictions the Immigration and Naturalization Service served the Petitioner with a Notice to Appear (Form I-862) and charged him with deportability under sections 237(a)(1)(A), 237(a)(1)(B), 237(a)(2)(A)(iii), and 237(a)(3)(D), of the Immigration and Nationality Act, 8 U.S.C. §§1227(a)(1)(A), 1227(a)(1)(B), 1227(a)(A)(iii) and 1227(a)(3)(D). On November 3, 1999, an Immigration Judge who stated that his claim to US citizenship was not proven ordered Petitioner removed to Jamaica.

12. On March 08, 2000, the Board of Immigration Appeals (BIA) concurred with the Immigration Judge, and Petitioner order of removal became final. On or about March 13-28, 2000, Petitioner timely filed a petition ( Case No: 00-3270) in the U.S. Court of Appeals for the Third Circuit for a judicial review of the BIA decision on his final order of removal and claims of United States nationality. A motion for a stay of removal pending his judicial review was also submitted at that time.

13. On or about April 03, 2000, Petitioner was physically removed to Jamaica before the court had made a decision on the petition for review or motion to stay removal. On or about April 09, 2002, after spending more than two years in the Jamaica Constabulary Force Immigration custody, he was repatriated home with the help of the United States Embassy and the Jamaican Government.

14. On or about April 22, 2005 while serving a New York State conviction at the Hudson Correctional Facility, Petitioner was interviewed by an agent from the Department of Homeland Security. Petitioner explained to the agent that he is a U.S. citizen, and also the nature of his removal and repatriation. At the conclusion of the interview, the agent informed the Petitioner that he will investigate the information received and if such information is not verified, he will return in a week to serve the appropriate papers. The agent or no other agent for the Homeland Security had returned to see the Petitioner.

15. On September 5, 2006, on the day Petitioner was paroled from the New York State Correctional Department, he was placed in the custody of the Immigration and Custom Enforcement (ICE) pursuant to a detainer (Form I-247) and warrant of removal (Form I-205) dated November 03, 1999. On October 17, 2006, Deportation Office Koson at the Batavia Federal Facility told Petitioner that he is scheduled for removal.

**16.** As a result of Deportation Officer Koson statement, a timely notice of petition for review was filed on October 30, 2006 in the United States Court of Appeals for the Third Circuit for a review of the reinstated removal order and claim to United States Nationality. An application for a stay of deportation pending the petition for review was also made. **Both the Petition for Review of the reinstated removal order and Motion for Stay are still pending in the Court of Appeals for the Third Circuit.**

17. Although, BICE has not acknowledge Petitioner's claim to Unites States Citizenship, Petitioner's custody status was neither reviewed at the 90days nor 180days (six months) period pursuant to 8 C.F.R. § 241,13(b)(2)(ii).

18. In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that six-months is the presumptively reasonable period during which BICE may detain aliens in order to effectuate their removal. Id at 702. Interim administrative regulations also recognize that the HQPDU has a six-month period for determining whether there is a significant likelihood of an alien's removal in

the reasonable foreseeable future. 8 C.F.R. § 241.13(b)(2)(ii). See <u>Clark v</u> <u>Martinez</u>, 125 S.CT. 716, 160 L.ED. 29 734, 73 ULLW 4100(U.S. 2005)

19. According to the government, Petitioner's removal order was reinstated on April 22, 2005. Petitioner was taken into the custody of BICE on September 05, 2006, and the removal order became final on that date. Therefore, the six-month presumptively reasonable removal period for Petitioner ended on March 05, 2007.

## ARGUMENTS
## <u>Point I</u>

**An alleged alien whose claim of United States Nationality that is not recognized by the Bureau of Immigration and Custom Enforcement can not <u>be indefinitely detained in their custody.</u>**

20. Section 236( c) of the Immigration and Nationality Act, as amended, provides that "(t)he Attorney General shall takes into custody any alien who" is removable from this country because he has been convicted of one of a specified set of crimes. The statute requires the Department of Homeland Security to take into custody any alien who 'is deportable' from the United States based on having been convicted of any of a wide range of crimes.

21. It is respectfully submitted that INA section 236( c) and other mandatory detention statutes were deemed unconstitutional by majority of courts. See

Hoang v. Comfort, 282 F.3d 1247(10th Cir. 2002); Patel v. Zemski, 275 F.3d 299 (3d Cir. 2001).

22. While it is established that inadmissible aliens or those subject to exclusion orders do not enjoy due process rights under the Fifth Amendment to the United States Constitution, several District Courts have affirmed that Courts have the power and the responsibility to review the governments's exercise of detention in cases involving inadmissible aliens. See Zadvydas v. Davis, 121 S.Ct. 2491, 2501 (2001) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law, " *quoting* Shaughnessy v. United States ex rel, Mezei, 345 U.S. 206, 212 (1953)).

23. Although Petitioner is in custody as a result of a wrongful reinstated final order of removal and his detention is presumed permissible based upon this final order of removal, it has exceed all limits of the reasonable exercise of the government's authority. See Zadvydas, 533 U.S. 678; Rosales-Gracia v. Holland, 238 F.3d 704, 725 (6th Cir. 2003). The Supreme Court's decision in Zadvydas that removable and excludable aliens are situated differently before and order of removal is entered. The Court went on to hold that both removable and inadmissible aliens are entitled to be free from detention that is arbitrary and capricious, and the Court stated that six (6) months was the maximum period of post order detention that was presumptively reasonable given the alien's fundamental liberty interest. Zadvydas, 533 U.S. at 692. Also See Clark v Martinez, 125 S.CT. 716, 160 L.ED. 29 734, 73 ULLW 4100(U.S. 2005)

24. The Court in <u>Patel v. Zemski</u>, 275 F.3d 299(3d Cir. 2001) also stated that under Zadvydas immigration detention implicates a fundamental liberty interest and that the INS is limited to a "period reasonably necessary to bring about the alien's removal generally no more than six months." <u>Id</u> at 209 (<u>citing</u> <u>Zadvydas</u>, 533 U.S. at 692). Additionally, the Code of Federal Regulations recognizes that the Service's Headquarters Post-order Detention Unit (HQPUDU) must make a determination within a six-month period as to whether there is a significant likelihood that a alien or alleged alien can be removed from the United States in the reasonably foreseeable future. See 8 C.F.R. §241.13(b)(2)(ii). Presumptive reasonable time established by the Supreme Court. Such prolonged detention is arbitrary and capricious since Petitioner's removal again to Jamaica will never occur in any reasonable foreseeable future, or as a matter of fact, any time in the future at all.

25. Prior to the Supreme Court's decision in Zadvydas, courts in the Third Circuit determined that aliens are not subject to prolonged post-order detention. <u>See</u> <u>Chi Thon Ngo v. INS</u>, 192 F.3d 390 (3rd Cir. 1999)("stakes are high and we emphasize that grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens"). In <u>Chi Thon Ngo</u>, the court found that the statue satisfied due process because it provided for " searching periodic reviews" of the basis for detention but granted the petitioner's writ of habeas corpus since he had not received the " rigorous reviews of his eligibility for parole that due process requires." Id at 399.

26. Following <u>Zavadas,</u> the Attorney General promulgated regulations establishing a process for determining the custody of aliens or alleged aliens subject to

prolonged detention awaiting execution of a removal order. See 8

C.F.R.§241.13. Section 241.13 applies to aliens, as well as to person who BICE

alleged is an alien such as Petitioner, "Who are subject to a final order of

removal and are detained under the custody review procedures provided at

[section] 241.4 after the expiration or removal period...." 8 C.F.R. §241.13(a).

"Section 241.13 tracks <u>Zadyvas</u>'s mandate in that it requires a deportable alien

or alleged alien to first establish a basis that removal in the 'reasonably

foreseeable future' is not possible." <u>Jabir v. Ashcroft</u>, No. civ.A.03-2480, 2004

WL 60318, at 85 (E.D. La. Jan. 8, 3004).

27. A non-citizen who is detained may trigger HQPDU review of whether there is a

significant likelihood of removal in the reasonably foreseeable future by written

request. 8 C.F.R..§241.13(d). The HQPDU must respond to such a request

within ten business days, acknowledge the request, and explain the process that

will be followed to consider the request. 8 C.F.R. §241.13(e)(1). The HQPDU

must that assess the detainee's cooperation with removal efforts in addition to

factors such as the history of BICE's "efforts to remove aliens to the country in

questions or third countries,...the ongoing nature of efforts to remove this

alien,...the reasonably foreseeable results of those efforts, the views os the

Department of State regarding the prospects or removal of aliens to the country

or countries in question, and the receiving country's willingness to accept the

alien into its territory." 8 C.F.R. §241.13(f). According to the regulations,

while "there is no presumptive period of time within which the aliens's removal

must be accomplished,... the prospects of the timeliness of removal must be

resonable under the circumstances." 8 C.F.R. §241.13(g). If HQPDU

determines that there is no significant likelihood that the alien will be removed

in the reasonable foreseeable future, the alien is to be released, upon appropriate conditions, unless "special circumstances" exist. 8 C.F.R. §241.13(g)(1).

28. Special circumstances allowing the continued detention of noncitizens who are subject to removal but unlikely to removed in the reasonably foreseeable future include those who pose a special safety risk to the public, in the sense that they carry contagious diseases, 8 C.F.R. §241.14(b), pose serious adverse foreign policy consequences, 8 C.F.R. §241.14(c), are being detained because of anti-terrorism concerns, 8 C.F.R §241.14(d), or have been determined to be "specially dangerous," either because of the alien's criminal record or by virtue of mental illness. 8 C.F.R. §241.14(f).

29. In the instant case, Petitioner had not received a "searching periodic review" of his custody status. BICE has never asserted that special circumstances exist to justify Petitioner's prolonged detention, or that Petitioner poses a danger to the national security or significant flight risk. Instead, agents of BICE choose to ignore the Petitioner while he linger in there custody indefinitely. Petitioner alleges that his detention violates both substantive and procedural due process insofar as BICE has failed to conduct a periodic review of his status in accordance with its own procedures and has made no determination that he posed either a danger to society or a flight risk.

30. This Court should grant Petitioner's writ of habeas corpus because the government has failed to acknowledge his compliance with all of the obligations of his detention or provide another valid reason for his continued detention, and his unjustly prolonged detention deprives Petitioner of his liberty. See Chi Thon Ngo, 192 F.3d at 393. Because Petitioner's removal to

Jamaica again well never happen in any foreseeable future, and that he is not a flight risk or a threat to the community, there is no justifiable reason for his continued detention. Since Petitioner's detention has continued beyond the six-month past-removal period, his continued detention should be deemed an unlawful deprivation of his liberty <u>See</u> <u>Zadvyds</u>, 522 U.S. 678. Also <u>See</u> <u>Clark v Martinez</u>, 125 S.CT. 716, 160 L.ED. 29 734, 73 ULLW 4100(U.S. 2005)

31. Petitioner contends that his prolonged detention without the possibility of bond violates the Constitution. Petitioner respectfully requests that this honorable court consider as persuasive authority the decision of the United States Court of Appeals for the Third Circuit with respect to the application of the time limiting provision of 8 U.S.C. §1226 as preventing the prolonged detention of inadmissible or excludable alleged aliens. See Patel v. Zemski, 275 F.3d 299 (3d Cir. 2001)(holding that mandatory detention of aliens after they have been found subject to removal violates their die process rights unless they have been afforded the opportunity for an individualized hearing at which they can show that they do not pose a flight risk or danger to the community); <u>Chi Thon Nog v. INS</u>, 192 F.3d 390, 398 (3d Cir. 1999)(same).

## Point II

**Evidence that were used in violation of Petitioner's Constitutional Due process rights were not "clear and convincing" evidence that proved Petitioner is an alien.**

32. On November 3, 1999, Immigration Judge Walter Durling ordered Petitioner removed to Jamaica stated that claim to U.S. citizenship was not proven.

Petitioner filed an appeal to the Board of Immigration Appeals (BIA) where he argued that he is a United States citizen and not subject to removal, and that the Immigration Judge erred in finding him a Jamaican citizen based on evidences that were false and procured in violation of his Fourth and Fifth Amendment Constitutional rights. The Supreme Court has established that the burden of proof is upon the government to show on all issues for deportation, including proving that Petitioner is not an U.S. citizen, by "clear and convincing" evidence that facts alleged are true. See Woodby v. INS, 385 U.S. 276 (1966).

33. The BIA in its conclusion agreed that neither the Immigration Judge nor the Board has the authority to deport a United States Citizen. See Trop V. Dulless, 356 U.S. 86 (1957); Matter of Fuentes, 21 I&N Dec. 893, 898-99 (BIA 1997). However, the Board concurred with the Immigration Judge's conclusion finding that the Petitioner claims to United States citizenship lack credibility. The BIA based its conclusion on two main arguments.

**First argument**: (See Attachment "A", page A-20)

" The Immigration and Naturalization Service disputes the respondent's citizenship claim and charges that he is in fact, a native and citizen of Jamaica. **The Service asserts that while working for the New York Human Resources Administration, the respondent illegally obtained the records of the real " Paul Milton Miles," a United States Citizen, and assumed his identity.** The Service presented the testimony of Gary Hittelman a retire Service Special Agent and Gerad Hoey, Deputy Inspector General of the New York City Department of Investigation in support of their claim."

34. The premises that the BIA used to support this argument are false and lack any tangible evidence to support this assertion. The INS/BICE administration record clearly proved that such argument lacked merits. First, Petitioner did not gain employment with the Human Resources Administration until on or about November 29, 1990 (See Attachment "B": INS File No: 000536), and that his job application file contains a copy of his U.S. birth certificate (See Attachment "C": INS File No: 000425) and Social Security Card prior to his first day on the job. In addition, Evidence in the administration record proved that Petitioner's name change was on or about June 7, 1984, six years prior to such employment. Second, his fingerprint profile, passport, driver's license, and numerous other documents even those presented by the INS/BICE proved that the Petitioner is who he said he was more than seven years prior to his employment with the Human Resources Administration. Therefore, such argument is false and unsupported. The fact that the BIA improperly used this argument by the INS/BICE in making a ruling when there is no logical, tangle evidence to support it in a removal proceeding, while at the same time ignored facts that are plainly in the record that proved this argument to be false is simple unfair, a gross miscarriage of justice, and a violation of the Petitioner's right to due process. U.S.C.A. Const. Amend 5; Immigration and Nationality Act, § 242(d)(1), as amended, 8 U.S.C.A. § 1252(d)(1). For the BIA to use this argument that is false and misleading violated procedural due process. Procedural due process focuses on the fairness of the process used by the government when it act to deprive a person of life, liberty or property. See Mathews v. Eldridge, 424 U.S. 319, 76 S.Ct. 893, 47 L. Ed 2d 18 (1976). It is well settled that the Fifth Amendment entitled Petitioner in deportation proceedings to due process of law. See Reno V Flores, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed 1 (1992); Plyler 457 U.S. at 202. Such violation by the BIA is

noting more than a gross miscarriage of Justice and as such had prejudiced the Petitioner. A prejudice that resulted in the Petitioner to be strip of his U.S. citizenship and deported to place not of his birth.

35.    **Second argument**: (See Attachment "A", page A-21)

> " Alternatively, we note that the Service has provide ample credible evidence showing the respondent to be a native and citizen of Jamaica. As noted above the Service provided a copy of the respondent's Jamaican passport bearing his picture and signature. The Service also included copies of numerous arrival departure records (Form 1-94) for a Junior Nathaniel Ricketts bearing the same identification number contained in his Jamaican passport. In light of the overwhelming evidence contained in the record, we will affirm the Immigration Judges decision in this case and find the respondent is a native and citizen of Jamaica."

This argument that is accepted and presented by the BIA is unsound as the premises used to support it are false. It is not a disputed fact that the Petitioner had obtained a false passport (No. 565227) from the Jamaican Embassy in New York City in the name of Junior Nathaniel Ricketts with a year of Birth of 1965 (See Attachment "D": INS File No.000388). This passport which was removed from his apartment by retire Service Special Agent Gary Hittelman without permission or without a legal search warrant in violation of Petitioner Fourth, Fifth Amendment, and the Code Of Federal Regulations 287 was only intended to be used on his trip to the Middle East (Mica). See Blackie's House of Beer v. Castillo, 659 F.2d 1211, 1217 (D.C. Cir. 1981). See also Illinois Migrant Council v. Pillion, 531 F.Supp. 1011, 1021-22 (N.D. ILL.1982). See 8 C.F.R. §§287.8(f)(2), 287.9(a).

(See Attachment "E": INS File No.000208)[1] Also, (See Attachment "F": INS File No.000264,)[2] However, the passport was never used to exit or enter any local or international boarder. Also, the Jamaican Embassy informed the INS/BICE that the Petitioner obtained the passport fraudulently and that he his not the original passport holder. The passport (No. 1148711) that was used to enter and exit the United States do not have the same picture, signature or identification number has the one that the Petitioner had in his apartment (See Attachment "G": INS File No.000389) This third-party document was never authenticated as that belonging to the Petitioner. As a matter of fact, the Jamaica Embassy told INS/BICE that the Petitioner is not the original holder. Authentication of document is required in deportation/removal proceedings. See Sandoval-Vera v. INS, 667 F.2d 792 (9th Cir. 1988); Iran v. INS, 656 F.2d 469, 472 (9th Cir. 1981); Tashnizi v. INS, 585 F.2d 781, 783 n. I (5th Cir. 1978); Matter of Exantus and Pierre, 16 I&N Dec. 382 (BIA 1977); cf. Dallo v. INS, 765 F.2d 585, 586 (6th Cir. 1985); Matter of Wadud, Int. Dec. 2980, slip op. at 9 (BIA 1984). The arrival /departure records (Form I-94) also showed a different passport number (No: 1148711) and signature than that of the Petitioner also lacked authentication. Also, Mr. Hittleman (the retire Service Special Agent) testified before the Immigration Judge that he was unable to link the arrival/ departure records (Form I-94) with the Petitioner. The fact that the BIA improperly considered this evidence in removal proceedings and assumed facts not

---

[1] INS Special Agent Mr. Hittleman in his testimony lied to the Immigration Judge on how he came to have in his procession the Jamaican Passport that was removed from the Petitioner's apartment through a Fourth Amendment violation by saying that he received it from Mr. Hoey.

[2] Mr. Hoey in his testimony told the Immigration Judge, " Yes, Mr. Hittelman also provided me with a copy of Mr. Ricketts' Jamaican passport. I have that in my file as well." Therefore, the question is: on what authority did the INS had to enter a private dwelling without a search warrant, consent or " exigent circumstances" to search, size and remove items from this dwelling and used such in evidence?

in the record is a procedural error that violated the Petitioner's right to due process. U.S.C.A. Const. Amend 5; Immigration and Nationality Act, § 242(d)(1), as amended, 8 U.S.C.A. § 1252(d)(1). Government's use of evidence that it knows to be false or gathered in violation of due process clause of the Fifth Amendment violates Petitioner's due process rights. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed 29 667 (1978); Silverman v United States, (1977, CH2 NY) 556 F.2d 655, Cert den 434 US 956, 54 L.Ed 2d 315, 98 S.Ct. 484. The Petitioner was prejudiced by this BIA's procedural errors. A prejudiced that forced the Petitioner to be removed from his country and to be incarcerated in a Jamaica Immigration jail for over two years before he was repatriated home.

36.     The BIA also indicated that the Petitioner had provided substantial evidence in supporting of his U.S. Citizenship Claim: "*In support of this contention the respondent provide a copy of a birth certificate, United States passport, driver's license, credit report, educational records, and name change petition.*" (See Attachment "A", page A-20). However, the BIA chose to dismiss the merits of these documented records and applied Ad Hominen arguments (" respondent lack of credibility" and he is inconsistent) to justify their conclusion. Proceeding before an immigration judge is not bound by strict evidentiary rules; instead the proceeding must be consistent with the requirement of due process. See Li v. Ashcorft, C.A.9 2002, 312 F.3d, rehearing granted opinion vacated 335 F.3d 858, on rehearing 356 F.3d 1153. Due process clause requires that even an alien threatened with deportation must be provided with right to full and fair hearing. See Arreola-Arreola V. Ashcroft, C.A.9 2004, 383 F.3d 956. Constitutional Law 274.3. By reason of the BIA acceptance of this argument by the INS/BICE, Petitioner suffered an infringement of rights because his U.S. citizenship was not

recognized, and as a result of this, he is detained indefinitely in the Custody of BICE.

## FRIST CLAIM FOR RELIEF

37. Petitioner re-alleges and incorporates by reference paragraphs I through 19 as is set forth fully herein.

38. Petitioner's continued detention by Respondent is unlawful and contravenes 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in <u>Zadvydas</u>. The six-month presumptively reasonable period for removal efforts has expired. Petitioner still has not been removed, and Petitioner continues to languish in detention. Petitioner's removal to Jamaica again or any other country is not significantly likely to occur in the reasonably foreseeable future. The Supreme Court held in <u>Zadvydas</u> that the BICE's continued detention of someone like Petitioner under such circumstances is unlawful.

39. Petitioner request that the government show cause why Petitioner's continued detention is justified; especially, when they were informed by the Jamaica Government that Petitioner is not a native or citizen of Jamaica, therefore, BICE need not request any travel document for the Petitioner from the Jamaica Government.

## SECOND CLAIM FOR RELIEF

40. Petitioner re-alleges and incorporates by reference paragraphs 1 through 31 above as set forth fully herein.

41. Petitioner's alleges that in light of the equities in this case, Petitioner's prolonged detention- more than six months-violates his right to substantive due process under the Fifth Amendment to the United States Constitution.

32. The Due Process Clause of the Fifth Amendment requires that the deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. While respondents would have an interest in detaining Petitioner in order to effectuate removal, that interest does not justify the indefinite detention of Petitioner, who is not significantly likely to be removed in the reasonably foreseeable future. <u>Zadvydas</u> recognized that the BICE might continue to detain aliens only for a period reasonably necessary to secure the alien's removal. The presumptively reasonable period during which BICE may detain an alien is only six-months. Petitioner has already been detained in excess of six-months and Petitioner's removal is not significantly likely to occur in the reasonably foreseeable future.

## THIRD CLAIM FOR RELIEF

42. Petitioner re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 24 as is set forth fully herein.

43. Petitioner alleges that in light of the equities in this case, Petitioner's prolonged detention – more than six month – without a meaning review of his detention in accordance with federal regulations violates his right to procedural due process under the Fifth Amendment to the United States Constitution.

## FOURTH CLAIM FOR RELIEF

44. Petitioner re-alleges and incorporates by reference each and every allegation contained in paragraphs 32 through 36 as set forth fully herein.

45. Petitioner alleges that in light of the fact that evidence used by INS/BICE in violation of Petitioner's Constitutional rights to substantiate the claim that he is an alien and to justify the action to keep him in custody indefinite without any review of his detention in accordance with federal regulation violates Petitioner's right to procedural and substantive due process under the Fifth Amendment to the United States constitution.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Honorable Court grant the following relief:

(1) Grant the writ of habeas corpus;

(2) Issue an order requiring Respondents to promptly release Petitioner because there is no likelihood that Petitioner will be removed in the reasonably foreseeable future, and that alienage was not prove by clear and convincing evidence.

(3) Order the Attorney General and his agents not remove Petitioner from the jurisdiction of this Court during the duration of the consideration of the petition.

(4) Award to Petitioner reasonable cost and attorney's fees, and grant any other and further relief that this Honorable Court deems just and proper.

**I affirm, under penalty of perjury, that the foregoing is true and correct.**

Dated this 8<sup>h</sup> day of March, 2007

Junior M Ricketts
*Pro Se* Litigant
A# 27-024-434
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, N.Y. 14020

# ADDENDUM

Attachment "A" (BIA March 8, 2000, Decision)....................A-1

Attachment "B" (Date Petitioner was employed with HRA)...   A-4

Attachment "C" (Petitioner's Birth Certificate)..................... A-5

Attachment "D" (Passport # 565227 found in Petitioner's home A-6

Attachment "E" (Mr. Hittelman testimony on passport)...........A-7

Attachment "F" (Mr. Hoey testimony on passport)..................A-8

Attachment "G"(Original Passport # 1148711 with true holder)...A-9



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

RICKETTS, JUNIOR NATHANIEL
600 OLD COLONY ROAD
SELINSGROVE, PA 17870-0000

INS LIT./York Co. Prison/YOR
3400 Concord Road
York, PA 17402

COPY

Name: RICKETTS, JUNIO NATHANIEL

A27-024-434

Date of this notice: 03/08/2000

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

*Paul W. Schmidt*

Paul W. Schmidt
Chairman

Enclosure

Panel Members:
   JONES, PHILEMINA M.
   THOMAS, ELLEN K.
   VACCA, FRED W.

RECEIVED
DEPARTMENT OF JUSTICE
2000 MAR 13  A 7 : 11

ANDREWSD

File: A27 024 434 - York

Date: **MAR - 8 2000**

In re: JUNIOR NATHANIEL RICKETTS a.k.a. Junior Mohammed Ricketts, a.k.a. Paul Milton Miles

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Pro se

ON BEHALF OF SERVICE: Jeffrey T. Bubier
Assistant District Counsel

CHARGE:

Notice: Sec. 237(a)(1)(A), I&N Act [8 U.S.C. § 1227(a)(1)(A)] -
Inadmissible at the time of entry or adjustment of status
under section 212(a)(7)(A)(i)(I), I&N Act [8 U.S.C.
§ 1182(a)(7)(A)(i)(I)] - Immigrant - no valid immigrant
visa or entry document

Sec. 237(a)(1)(B), I&N Act [8 U.S.C. § 1227(a)(1)(B)] -
In the United States in violation of law

Sec. 237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -
Convicted of aggravated felony

Sec. 237(a)(3)(D), I&N Act [8 U.S.C. § 1227(a)(3)(D)] -
False claim of United States citizenship

APPLICATION: Termination

The respondent's appeal of the Immigration Judge's decision finding him to be a citizen and national of Jamaica and ordering him removed from the United States will be dismissed.

The respondent in this case asserts that the Immigration Judge erred in finding that he is a citizen and national of Jamaica. The respondent maintains that he was born in the United States on August 31, 1964. As such, the respondent claims that he is a United States citizen. The respondent also

argues that the Immigration Judge abused his discretion in admitting certain documents into the record of proceedings obtained in violation of his rights under the Fourth and Fifth amendments of the United States Constitution.

The respondent was convicted on January 9, 1995, of illegal entry and harboring aliens in the United States in violation of 8 U.S.C. § 1324(a)(1)(D). The respondent was also convicted of embezzlement of funds from a federally funded government agency, fraud and misuse of an alien registration card, and illicit transportation of a minor with the intent to engage in sexual activity, in violation of 8 U.S.C. §§ 666(a)(1)(A), 1546, and 2423. As a result of these convictions the Immigration and Naturalization Service served the respondent with a Notice to Appear (Form I-862) and charged him with deportability under sections 237(a)(1)(A), 237(a)(1)(B), 237(a)(2)(A)(iii), and 237(a)(3)(D), of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(1)(A), 1227(a)(1)(B), 1227(a)(2)(A)(iii) and 1227(a)(3)(D). We note that the respondent does not contest the allegations that he was convicted or that the convictions are deportable offenses, instead, the respondent contests the Service's allegation that he is an alien.



Neither the Immigration Judge nor this Board have the authority to deport a United States citizen. See Trop v. Dulles, 356 U.S. 86 (1957); Matter of Fuentes, 21 I&N Dec. 893, 898-99 (BIA 1997). Nevertheless, we concur with the Immigration Judge's conclusion finding that the respondent's claims to United States citizenship lack credibility (I.J. at 7). The respondent in this case presented inconsistent evidence in support of his claim to citizenship. For example, the respondent presented evidence that he legally changed his name from "Paul Milton Miles" to "Junior Mohammed Ricketts" in 1984. When confronted by the Service with the fact that the name "Junior Nathaniel Ricketts" appeared on a Jamaican passport found in his apartment the respondent testified that the passport had been obtained for him in 1984 by a Jamaican man named Junior Ricketts (Tr. at 187).

We find that the above discrepancy, along with many others detailed by the Immigration Judge in his written decision, provide specific and cogent reasons to support the Immigration Judge's conclusion that the respondent's claim lacks credibility. We note that a convincing explanation for these discrepancies has not been supplied by the respondent. Consequently, we will accord deference to the Immigration Judge's findings concerning the respondent's lack of credibility in this case. See Matter of A-S-, 21 I&N Dec. 1106 (BIA 1998).

~~Alternatively, we note that the Service has provided ████████████████ the respondent to be a native and citizen of Jamaica. As detailed ████████████████ the respondent's Jamaican passport, bearing the same ████████████████ copies of immigration arrival/departure records (Form I-94) for a Junior Nathaniel Richards the same identification number contained in the Jamaican passport. In consideration of evidence contained in the record we will affirm the Immigration Judge's finding that the respondent is a native and citizen of Jamaica.~~

We reject the respondent's motion to suppress. Absent a showing of widespread abuse or an egregious violation that transgresses notions of fundamental fairness, an alien in immigration proceedings cannot suppress evidence assertedly procured in violation of his rights under the United States Constitution. See INS v. Lopez-Mendoza, 468 U.S. 1032 (1984). A motion to suppress must provide specific details of the Constitutional violation. See Matter of Barcenas, 19 I&N Dec. 609 (BIA 1988). In this case there is little evidence to support the respondent's assertions that the documentary evidence was procured in violation of his Constitutional rights. As such, we deny the respondent's motion to suppress. Accordingly, the following order shall be entered.

ORDER: The respondent's appeal is dismissed.

_____
FOR THE BOARD

3

ordered psychiatrict evaluation on June 8, 1987, at 100
Centre Street, N.Y.C. A Dr. Grant saw the defendant and
provided the following findings: The subject is inclined to
be schizotypal with personality disorder. The psychiatrist
added that the defendant is withdrawn, but has good contact.
Ricketts denied being homosexual or bisexual. Dr. Grant
recommended that Ricketts needed psychotherapy.

## Physical Cond., Including Drug Dependence & Alcohol Abuse

110. Ricketts stands 5'10", weighs approximately 140 pounds, and
has short black hair. There were no visible scars or
tattoos. As we did not interview the defendant, we were
unable to find out about his present health status.

111. The N.Y.C. Probation report indicates that Ricketts reported
to be in good health. He claimed not to be homosexual or
bisexual. At that time, Ricketts was to undergo a court
ordered AIDS test. No results of the tests were reported.

112. In the probation report, Ricketts admitted that he
experimented with marijuana. He alleged that he did not feel
anything. He denied the use of other drugs, admitting only
to being an occassional drinker.

## Educational and Vocational Skills

113. U.S. Pretrial Services provided us with information which
indicated that Ricketts attended Brooklyn College, Bklyn,
N.Y. from 2/85-1/91. A representative of the college related
that the defendant graduated in February 1991 under the name
Junior M. Ricketts, and indicated that all of Ricketts'
"college records are clear and favorable". We noted that the
subject provided Pretrial Services with the name of Robert
Ricketts as his father, and Lizzie Nee Paig, as his mother.

## Employment Record

114. From October 1992 to the present, Ricketts has been in
federal custody for the instant offense. As such, he has no
income.

115. ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

116. Representatives of the HRA/OIG provided us with information



000536

DOCUMENT NO. E 095924

# THE CITY OF NEW YORK
## DEPARTMENT OF HEALTH
## BUREAU OF VITAL RECORDS
## CERTIFICATION OF BIRTH

This is a certification of name and birth facts on file in the Bureau of Vital Records, Department of Health, City of New York.

**DATE OF BIRTH**  AUGUST 31, 1964      **CERTIFICATE NO.**  156-64-337372

**BOROUGH**  BROOKLYN   **DATE FILED**  10-26-64   **DATE ISSUED**  03-30-90

**NAME**  JUNIOR MOHAMMED RICKETTS ***

**SEX**  MALE

**MOTHER'S MAIDEN NAME**  LIZZIE MAE PAGE

**FATHER'S NAME**  ROBERT MILES, JR.

*Irene A. Scanlon*
IRENE A. SCANLON
CITY REGISTRAR

Do not accept this transcript unless it bears the raised seal of the Department of Health. The reproduction or alteration of this certification is prohibited by Section 3.21 of the New York City Health Code.

2X·2

C  A-5

000425

## DESCRIPTION – SIGNALEMENT – SEÑAS PERSONALES

| | Bearer – Titulaire – Titular | Wife – Femme – Esposa |
|---|---|---|
| Profession / Profession / Profesión | Student | |
| Place and date of birth / Lieu et date de naissance / Lugar y fecha de nacimiento | Kingston JAMAICA | |
| Country of Residence / Pays de Résidence / País de Residencia | JAMAICA | |
| Height / Taille / Estatura | 5 ft. 9 in. | ft. in. |
| Colour of eyes / Couleur des yeux / Color de los ojos | Brown | |
| Colour of hair / Couleur des cheveux / Color de los cabellos | Black | |
| Special peculiarities / Signes particuliers / Señas particulares | | |

**CHILDREN – ENFANTS – NIÑOS**

| Name – Nom – Nombre | Date of Birth – Date de naissance – Fecha de nacimiento | Sex – Sexe – Sexo |
|---|---|---|
| | | |

Usual Signature of Bearer / Signature du Titulaire / Firma del Titular

Usual Signature of Wife / Signature de sa Femme / Firma de su Esposa

*Ex 8*

*Passport found at Respondents apartment*

*EXHIBIT A*

*D*

*A-6*

000388

1      A.   Yes.

2   MR. BUBIER TO JUDGE

3      I have no further questions at this time, Your Honor.

4   JUDGE TO MR. HITTELMAN

5      Just a second.

6   JUDGE TO MR. RICKETTS

7      Q.   Mr. Ricketts, do you have any questions?

8      A.   Yes, Your Honor.

9      Q.   Go ahead.

10  MR. RICKETTS TO MR. HITTELMAN

11     Q.   ~~Sir, could you please tell the court where the Jamaican~~

12  ~~passport was located?~~

13     A.   ~~Was the question could you tell the court where the~~

14  ~~Jamaican passport was located?~~

15     Q.   Yes.   ~~The one that was taken from the Respondent's~~

16  ~~house.~~

17     A.   I can't hear you.

18  JUDGE TO MR. HITTELMAN

19     Q.   ~~The one that was taken from Mr. Ricketts' house.~~

20     A.   ~~My understanding is that it was located in your -- in~~

21  ~~what was then the Respondent's home, and that -- but -- where in~~

22  ~~the home it was located, I have no idea.~~

23  MR. RICKETTS TO MR. HITTELMAN

24     Q.   ~~Sir, could you tell us, how did you get the passport in~~

25  ~~your possession?~~

1      A.    ~~How did I get~~

2    JUDGE TO MR. RICKETTS

3          Repeat the question.

4    MR. RICKETTS TO MR. HITTELMAN

5          Q.    Sir, the passport, how did you get the passport?   How

6    do you possess this passport?   How was it given to you?

7          A.    The Jamaican passport?

8          Q.    Yes.   The one that was taken from the Respondent's

9    house.

10         A.    ~~The Jamaican passport would have been given to me by~~

11   ~~Mr. Hoey~~

12         Q.    Sir, was, was there any other evidence, tangible

13   evidence, that proved that the Respondent is a Jamaican native,

14   other than that Jamaican passport that was given to you by Mr.

15   Hoey?

16         A.    Could you repeat the question?   Was there any other?

17   JUDGE TO MR. HITTELMAN

18         Q.    Was there any other evidence other than the Jamaican

19   passport provided by Mr. Hoey to you, to show Jamaican

20   citizenship?

21         A.    Directly or indirectly?

22   MR. RICKETTS TO MR. HITTELMAN

23         Q.    That's not, not related to this passport.   Something

24   that's other than the passport, other the resident document that

25   you said you'd used.   Was there any other evidence that was given

A 27 024 434                          87                 E   A-8

000209

1     Q.  Other than the copy of the Jamaican birth certificate,

2  is there anything else that arose during your investigation to

3  shed light on the Respondent's claim to citizenship?

4     A.  ~~Yes. Mr. Hittelman also provided me with a copy of~~

5  ~~Mr. Ricketts Jamaican passport. I knew that to be file me well.~~

6     Q.  That's what you just referred to, isn't it?

7     A.  I'm sorry?

8     Q.  Didn't you just refer to that?

9     A.  No, my first statement, Judge, I was referring to an

10  actual birth certificate as opposed to a passport.

11     Q.  Oh, I'm sorry, you said passport.  Okay.

12  MR. RICKETTS TO MR. HOEY

13     Q.  So you're saying Mr. Hittelman provide you with a copy

14  of a Jamaican passport?

15  MR. BUBIER TO JUDGE

16     Objection.  That misstates the evidence.  He said he didn't

17  -- wasn't -- that the Jamaican passport came from Mr. Hittelman,

18  that the birth certificate, he couldn't recall if it came from

19  Mr. Hittelman or from the State Department.

20  JUDGE TO MR. HOEY

21     Q.  What did you testify concerning the passport?  Where

22  did you get the passport?

23     A.  I received a copy of that from Mr. Hittelman at

24  Immigration and Naturalization Services.

25  JUDGE TO MR. RICKETTS

F A-9



000389

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Junior M. RICKETTS | :   Civil Action No. |
| | : |
| **Petitioner,** | : Immigration File No: A 27-024-434 |
| | : |
| v. | : |
| | : |
| Charles MULE, | : |
| Facilities Director, Buffalo Federal | : |
| Detention Facility; | : |
| David VENTURELLA, | : |
| Director, Post-Order Detention Unit, | : |
| Bureau of Immigration and Customs | : |
| Enforcement; | : |
| Peter J. SMITH, | : |
| District Director, U.S. Citizenship and | : |
| Immigration Services: | : |
| Alberto GONZALES, | : |
| Attorney General of the United States | : |
| | : |
| **Respondent** | : |

---

### CERTIFICATE OF SERVICE

I, Junior M. Ricketts, the petitioner in the above-captioned case, hereby certify under penalty of perjury that I personally caused to be served a copy of the Petitioner Habeas Corpus together with all attachments, by regular mail on this March 8, 2006, to the following individuals and addresses.

Charles Mule
Facility Director
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, N.Y. 14020

Honorable Alberto R. Gonzales
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin  Station
Washington, DC 20044


Executed on: march 8, 2007, in Batavia, New York

Mr. Junior M. Ricketts
Pro Se
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020