IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

Junior M. Ricketts,
A# 27-024-434,

                    Petitioner,

v.

Charles Mule, Facilities Director,
Buffalo Federal Detention Facility;
David Venturella, Director,
Post-Order Detention Unit,
Bureau of Immigration and Customs
Enforcement;
Peter J. Smith, District Director,
U.S. Citizenship and Immigration
Services;
Alberto Gonzales,
Attorney General of the United States,

                    Respondents.          07-CV-0138 Sr

---

## ANSWER and RETURN

### I.  PRELIMINARY STATEMENT

This Answer and Return and accompanying Memorandum of Law

are submitted in opposition to the Petition for Writ of Habeas

Corpus filed by petitioner, Ricketts, A# 27-024-434, (hereinafter

"Ricketts" or "petitioner").  The petitioner challenges his

continued custody while a travel document is secured from his

native country.  Petitioner does not challenge the underlying

order of removal before this Court although he has a Petition for

Review pending before the Court of Appeals for the Third Circuit

under its Docket No. 06-4612.  Respondents oppose the instant

habeas petition for failure to state a claim upon which relief can be granted.

## II. **ANSWER**

### A. **Jurisdiction and Venue**

1. Respondents do not dispute that this Court has jurisdiction, as asserted by petitioner, pursuant to 28 U.S.C. § 2241.

2. Respondents do not dispute that venue is proper in the Western District of New York.

### B. **Facts and Procedural History**

3. On or about November 3, 1999, Petitioner, a native and citizen of Jamaica, was ordered removed as an alien inadmissible at the time of entry, present in the United States in violation of law, for having been convicted of an aggravated felony, and for having made a false claim to United States citizenship, pursuant to 8 U.S.C. § 1227(a)(1)(A), (a)(1)(B), (a)(2)(A)(iii), and (a)(3)(D), respectively. See Answer and Return, Exhibit 1, Declaration of Robert Faber (hereinafter "Faber Declaration").

2

4. On or about March 8, 2000, the Board of Immigration Appeals dismissed the appeal from the IJ's order, specifically finding that the IJ correctly determined that Ricketts was not a United States citizen and rather was a native and citizen of Jamaica. Id., ¶ 5.

5. On or about April 3, 2000, Ricketts was removed to Jamaica. Petition, ¶ 13; Faber Declaration, ¶ 6.

6. At some point, petitioner re-entered the United States.

7. On or about April 22, 2005, petitioner was issued a Notice of Intent/Decision to Reinstate the prior order of removal. Id., ¶ 8.

8. On or about September 5, 2006, Ricketts came into custody of the Department of Homeland Security, Customs and Immigration Enforcement ("DHS, ICE"), having been paroled from the New York State Department of Corrections. Faber Declaration, ¶ 9.

9. On or about October 30, 2006, Ricketts filed a Petition for Review with the United States Court of Appeals for the Third Circuit under its Docket Number 06-4612. Id., ¶ 10.

10. On April 16, 2007, the Third Circuit dismissed the Petition for Review as untimely given that it was filed on October 30, 2006, which was more than ninety days after the issuance of the reinstated Order of Removal on April 22, 2005. Id., ¶ 11.

## C. Opposition to Petition

11. As is more fully set forth in the accompanying Memorandum of Law, respondents oppose the petition and request that the Court deny the petition due to a failure to state a claim upon which relief can be granted. See, accompanying Memorandum of Law.

### III. RETURN

12. For his Return to the Petition, respondents provide, attached hereto, Exhibit 1, the Declaration of Robert Faber with attached Exhibits A through C.

## IV.  CONCLUSION

Based upon the foregoing as well as those matters asserted in the accompanying Memorandum of Law, this Court should deny the petition due to a failure to state a claim upon which relief can be granted.

DATED:   Buffalo, New York, May 8, 2007.

TERRANCE P. FLYNN
United States Attorney

BY:   s/ Mary E. Fleming
MARY E. FLEMING
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5700 ext. 867
[Mary.Pat.Fleming@USDOJ.gov]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

Junior M. Ricketts,
A# 27-024-434,

                Petitioner,

v.

Charles Mule, et al.,

                Respondents.        07-CV-0138 Sr

---

## DECLARATION

Pursuant to the provision of 28 U.S.C. § 1746, I, **Robert Faber**, hereby declare and state as follows:


1. I am employed by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), as a Deportation Officer at the Buffalo, New York, Field Office.


2. At the request of Assistant United States Attorney, Mary E. Fleming, I have reviewed the records maintained by my agency pertaining to petitioner Junior M. Ricketts ("Ricketts"), A# 27-024-434, an alien under a final order of removal from the United States. I am, therefore, familiar with the facts and circumstances of Ricketts's detention by DHS, ICE, and the efforts to arrange for his removal from the United States.

**EXHIBIT 1**

3.   I make this declaration in opposition to the petition for writ of habeas corpus filed by Ricketts and to place before the Court information and documents pertaining to this matter. The information provided herein is based upon my review of records of my agency and from various court dockets and documents.

4.   On November 3, 1999, Ricketts, a native and citizen of Jamaica, was ordered removed pursuant to INA §§ 237(a)(1)(A), (1)(B), (2)(A)(iii), and (3)(D) (8 U.S.C. §§ 1227(a)(1)(A), (1)(B), (2)(A)(iii), and (3)(D)), for being inadmissible at the time of entry, for his presence in the United States in violation of law, for having been convicted of an aggravated felony, and for making a false claim to United States citizenship. A copy of the IJ's decision is attached hereto as Exhibit A.

5.   The Board of Immigration Appeals dismissed Ricketts's appeal on March 8, 2000. A copy of the Board's decision is attached hereto as Exhibit B.

6.   On or about April 3, 2000, Ricketts was removed pursuant to the Order of Removal.

7.   Ricketts reentered the United States at an unknown date and location.

8.   On or about April 22, 2005, Ricketts was issued a Notice of Intent/Decision to Reinstate the prior order of removal. A copy of the Notice of Intent/Decision to Reinstate Prior Order is attached hereto as Exhibit C.

9.   Ricketts was taken into immigration detention on or about September 5, 2006, upon release from state custody pursuant to a conviction for forgery and grand larceny.

10.   On or about October 30, 2006, Ricketts filed a petition for review with the United States Court of Appeals for the Third Circuit.

11.   The Court of Appeals dismissed the petition by order dated April 16, 2007. A copy of the court's order is attached hereto as Exhibit D.

12.   Given the dismissal by the Third Circuit Court of Appeals, the deportation officers assigned to secure a travel document for petitioner's return to Jamaica will now continue those efforts.

13.   As a travel document was obtained from Jamaica in the past, it is likely that another document will be secured in the reasonably foreseeable future.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 7, 2007.

<u> s/ Robert Faber</u>
ROBERT FABER
U.S. Department of Homeland Security
Immigration and Customs Enforcement
Detention and Deportation Officer

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
YORK, PENNSYLVANIA 17402


**IN THE MATTER OF**                             IN REMOVAL PROCEEDINGS

RICKETTS, Junior Mohammed                     **CASE# A 27 024 434**
AKA Paul Milton Miles
**(RESPONDENT)**


**GROUNDS OF REMOVAL**: 237(a)(2)(A)(iii); (a)(1)(A),(B),(D); (a)(7)(A)(i)(I)


**ON BEHALF OF RESPONDENT**               **ON BEHALF OF INS**
Pro se                                      Jeffrey Bubier
                                            Assistant District Counsel


APPLICATION: Termination due to U.S. citizenship


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


**WRITTEN DECISION AND ORDER**


       The respondent in this case has requested the court to terminate these proceedings due to the fact that he is a United States citizen by virtue of birth [in the State of New York] on August 31, 1964. After considering all of the evidence of record, including all testimonial and documentary evidence presented to the court, the court finds that the Service has sustained its burden of proof of the respondent's alienage by clear and convincing evidence, and that the respondent has failed to effectively overcome the presumption of alienage by establishing that he is a United States citizen.

       In support of his claim to United States citizenship, the respondent submitted a copy of a New York State certificate of birth appended to the record at exhibit 2. The respondent has also produced copies of his New York State drivers license, exhibit 4; a copy of his credit report, exhibit 6; a copy of his high school diploma from George W. Wingate High School in New York City, exhibit 7; a copy of a Consular Report of Birth Abroad, indicating that one "Jerome Peter Junior Ricketts, Jr., was born in

1

**Exhibit A**

Kingston, Jamaica, on June 3, 1964, and who acquired U.S. citizenship at birth, exhibit 8; a copy of his college transcript from Brooklyn College, exhibit 13; another copy of a birth certificate indicating "Junior Mohammed Ricketts" was born on August 31, 1964, and which the respondent testified reveals his name change to "Mohammed" for religious reasons, exhibit 15.

However, it is the contention of the Immigration and Naturalization Service that the respondent is an imposter who illegally acquired the identity of one "Paul Milton Miles," a bona fide U.S. citizen. In this regard, the Service contends that the respondent is in fact a native and citizen of Jamaica who was born in that country on or about December 12, 1955, who was admitted to this country in 1982 as a non-immigrant visitor and who assumed the identity and citizenship of "Paul Milton Miles" and later changed his name to "Junior Mohammed Ricketts," and who has been convicted in federal court in New York for embezzlement, fraud, and crimes relating to alien smuggling of juvenile males from Jamaica. The Service has requested this court to reject the respondent's claim of U.S. citizenship, and to find him subject to removal from the United States due to his criminal convictions and overstay status. A hearing on the merits of this case was conducted in open court on September 9, 1999, where the respondent testified under oath or affirmation, and where the Service presented the testimony of two witnesses, whose testimony will be discussed, infra, in great detail.

Before proceeding further, a brief digression must be made concerning where exactly the burden of proof lies in this case. Again, the respondent claims U.S. citizenship by birth; the Service alleges the respondent was born abroad and entered the U.S. in 1982 with a non-immigrant visitors visa, overstayed that visa, and subsequently assumed the identity of a U.S. citizen. As a starting premise, the U.S. Supreme Court has held that in deportation proceedings, there is no presumption of citizenship similar to the presumption of innocence which exists in criminal cases. U.S. ex rel. Bilokumsky v. Tod, 263 U.S. 149 (1923); Lopez-Mendoza v. INS, 468 U.S. 1032 (1984); see also Matter of Benitez, 19 I&N Dec. 173 (BIA 1984). Moreover, since the alien alleges citizenship through birth, it does not appear that the burden on an alien set forth in section 291 of the INA to establish "time, manner, and place" of entry is applicable. See Matter of Benitez, supra, at 177-78, expounding upon those cases where the alien under deportation proceedings must carry his/her burden of proof in this regard. Of course, if this court should find in favor of the Service, it will automatically find the allegations set forth in the charging document to have been met by the Service. That is, there is no "fall back" position for the respondent. He contends that he is a U.S. citizen by virtue of birth, and has made no attempt to rebut the allegations on the charging document except through his assertions of U.S. citizenship.

A second premise is that the United States shoulders the initial burden of proof to establish the "alienage" of the person brought under removal proceedings. 8 C.F.R. § 240.8(c). While the federal implementing regulations refer in this regard to aliens present in the U.S. without being admitted or paroled, the court presumes the Service must carry a similar burden of establishing alienage for those persons the Service alleges are present with non-immigrant visas, as here, and are accused of falsely claiming to be U.S. citizens. The term "alien" is defined as "any person not a citizen of the United States." Section 101(a)(3) of the INA. To this end, the respondent does not have to establish that he is, beyond, any challenge, a United States citizen. "If the Government has not satisfactorily established alienage, that would end this deportation case." Matter of Cantu, 17 I&N Dec. 190, 194 (BIA 1978). However, the Board went on to note that "ending the deportation case" does not in and of itself resolve

2

the issue of citizenship, which also must be decided. In this case that is particularly so since one of the grounds for removal initiated by the Service is that the respondent has falsely claimed U.S. citizenship, pursuant to section 237(a)(1)(D). That being the case, the court finds, in the final analysis, that the burden lies with the Service to establish this ground and all other grounds of removal by "clear and convincing evidence." Section 240(c)(3)(A). If it does so, the court would, by necessity, have to resolve this case against the respondent by finding that he is not a United States citizen, whether such finding is based on the premise that the respondent has failed to effectively rebut the Service's evidence, or not. The end result would be the same. To that end, this section of the INA further instructs that any finding of deportability must be based on evidence that is "reasonable, substantial, and probative."

The Board has on a number of occasions, and in a variety of contexts, been called upon to determine the validity of claimed U.S. citizenship. Matter of Cantu, supra; Matter of Velasco, 16 I&N Dec. 281 (BIA 1977); Matter of Wayne, 16 I&N Dec. 248 (BIA 1977); Matter of Vergara, 15 I&N Dec. 388 (BIA 1975); Matter of Ponco, 15 I&N Dec. 120 (BIA 1974), all of which the court has reviewed. If there is one common denominator among these cases is that, to a very large extent, claim of U.S. citizenship is fact-specific. That is, there must be reasonable, substantial, and probative evidence in this case for the court to make finding s against the respondent's claim of U.S. citizenship.

The court called upon the Service to present its case-in-chief against the respondent in relation to his purported false claim to U.S. citizenship. In this regard, the Service first called Mr. Gary Hittelman, who testified that he is a retired special agent who was employed by the Service in 1993, working in conjunction with the United States Attorney's Office there investigating immigration fraud. This witness related that he was working cases involving immigration fraud in 1993 when he was called upon to check into a claim of U.S. citizenship made by the respondent during federal criminal proceedings being prosecuted in New York. According to the witness, two juvenile Jamaican males had been discovered living in the respondent's apartment and had complained of being brought to the United States by the respondent, who was not their relative. When the apartment was first searched, a U.S. passport in name of "Paul Milton Miles" was discovered and which contained the photograph of the respondent and reflected a name change to "Junior Mohammed Ricketts," with date of birth of October 12, 1955.

The witness testified that he then ran a multi-tiered computer and database records check under the name "Junior Nathaniel Ricketts," which turned up five records of entries (Forms I-94) from and to Jamaica between 1980 and 1981. The witness identified a memorandum (exhibit 9) he had prepared on January 11, 1993, for the federal probation office which was preparing a pre-sentence investigation report on the respondent, and to which the witness attached a number of documents, including the I-94s, all of which in turn reflected their use under a Jamaican passport in the name of "Junior Nathaniel Ricketts," passport number 114877. Given that this information raised the possibility of fraud, a second "permissive" search was conducted by the New York Department of Investigation on the respondent's apartment, which turned up a Jamaican passport with the respondent's photograph in it. This passport contained an endorsement that it had been issued as a replacement for Jamaican passport number 114877, which had been surrendered to the Jamaican Consulate in New York. The witness then described his obtaining copies of the birth certificate of "Paul Milton Miles," a copy of the court-ordered name change to "Junior Mohammed Ricketts," and a copy of the U.S. passport application completed

3

by the respondent.

As a part of his investigation, the witness also interviewed the Jamaican Consul in New York, who provided the witness access to Jamaican passport number 114887, which had been partially burned, which the respondent ostensibly surrendered to the Jamaican Consulate when he applied for its replacement. The witness testified that the only portion of the passport substantially burned was the biographic page, with other damage merely collateral to the passport. However, the witness related that the year of birth of the passport holder was readable, which read "1965," but which appeared to have been altered from "1955." Additionally viewed by the witness was the Jamaican passport application form completed by the respondent, as well as the Jamaican birth certificate used to qualify for applying for the passport, which, according to the witness, the Consul indicated was fraudulent and which should not have been sufficient for the issuance of the new Jamaican passport.

On cross-examination by the respondent, the witness admitted that he had no other "direct" evidence of false claim to U.S. citizenship, but that the "indirect" evidence "suggested" false identity, namely, the presence of the Jamaican passport in the respondent's apartment, his name change to "Junior Mohammed Ricketts," and the "trail" from the original valid Jamaican passport held by the Jamaican Consulate in New York to the respondent where a replacement passport was found in the respondent's apartment. When asked whether the replacement Jamaican passport contained any entry stamps, the witness admitted there was none, but the passport did "refer" to the partially destroyed passport which it replaced and which in fact had contained 5 entry stamps. When asked by the respondent whether the Jamaican Consul opined whether the holder of the two passports was the same person, the witness admitted that the Consul never indicated that, but that it was "presumed" they were one and the same person. When asked why, if the holder of both passports was the same person, such person needed to submit a fraudulent Jamaican birth certificate to obtain the replacement, the witness "speculated" that perhaps the respondent's "lifestyle" with juvenile Jamaican males was such that he felt it necessary to attempt to pass himself off as a younger man. Another question asked by the respondent of the witness was whether the photos and the signatures of the holder of the two passports were the same. The witness, acknowledging that he was not an expert in such areas of identification, nonetheless opined that the photographs were of the same person, as well as the signatures.

The Service called its next witness, Mr. Gerard Hoey, employed as a deputy inspector general with the New York City Department of Investigation, who testified that he conducted an investigation of the respondent in 1992 upon a criminal complaint against the respondent. In this regard, the witness testified that in 1992 allegations were made that, as an employee of the New York City Human Resources Administration, the respondent had misdirected public assistance checks to his own account which had been generated for the city's welfare clients and totaling approximately $110,000. During this investigation, the witness related, a 16-year-old Jamaican male stepped forward and complained that the respondent had smuggled him from Jamaica for purposes of sexual improprieties. As a result, a consent search was conducted of the respondent's apartment, which resulted in the discovery of the Jamaican replacement passport. At this point, the witness revealed, the Service was called in to identify and determine the alienage of the respondent. Through this investigation it was determined that the respondent was in fact "Junior Ricketts," born in Jamaica, and that he had assumed the identity of a U.S. citizen, one "Paul Milton Miles." In an effort to determine who Mr. Miles was, a computer check of

4

the respondent's employer, the New York City Human Resources Administration, revealed that he was the son of one "Lizzie May Miles" who was a client of the department who was receiving public assistance, and whose maiden name was "Lizzie May Page."

The witness continued with his testimony that on December 21, 1992, he interviewed Lizzie Miles at the offices of the welfare center, where she was asked to identify an employee photograph of the respondent; she could not. When the witness asked Mrs Miles whether the person in the photograph was her son, Paul Milton Miles, she replied in the negative, but could not be certain whether he might have been one of her son's friends. Mrs. Miles was then asked to identify a copy of a birth certificate for "Paul Milton Miles," which had been obtained from the Bureau of Vital Statistics by the witness. According to the witness, Mrs Miles identified the birth certificate as belonging to her son, Paul. Interestingly, the witness testified that when he showed Mrs. Miles a copy of the birth certificate which reflects the name change from "Paul Milton Miles" to "Junior Mohammed Ricketts," Mrs. Miles did not recognize the name, although all other information on the birth certificate did in fact relate to her son, Paul Milton Miles. This birth certificate is appended to the record at group exhibit 9-A, and reflects a tab "exhibit B" on the lower right corner of the document.

The witness then described procuring copies of the birth certificates of Mrs Page's other children, all of which reflect their place of birth as "855 Lafayette, Brooklyn," and their parents as being born either in "South Carolina" or the "United States." The witness then procured a copy of the "Application For The Correction Of A Certificate of Birth," drafted by the respondent when he made application to the state court for a name change for religious reasons. As noted by the witness, the respondent reflects his place of birth as "Lafayette" in Brooklyn. This document, too, is appended to the record as part of this witness's memorandum at group exhibit 9-A.

On cross-examination by the respondent, the witness testified that he examined the respondent's city employment records, which reflected a date of birth as August 31, 1964, and a social security number as 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. When asked whether the witness reviewed the respondent's "FBI file," he indicated that he had not. When questioned whether the witness had in his files any evidence suggesting that the respondent was not a U.S. citizen, the witness replied that he had a copy of a Jamaican birth certificate obtained with the assistance of the U.S. State Department, which reflects the birth of one "Junior Nathaniel Ricketts" born in Kingston, Jamaica. This, too, is attached at group exhibit 9-A, and is the penultimate document at that group exhibit.

When questioned concerning the interview with Lizzie May Miles, the witness acknowledged that he did not ask the lady for her social security number, never inquired as to where she was born, nor whether she was a citizen of the United States, and that the lady volunteered no information about her children other than she had a new life and had no contact with her children for many years. Finally, the witness acknowledged that people sometimes provide false information to the city welfare department in order to gain benefits, and that a person's "rap sheet" may contain false information if the person supplied inaccurate information to law enforcement personnel. The witness indicated that part of the biographical information contained in the "rap sheet" pertaining to the respondent was gleaned from his employment records.

Called as a witness by the Service, the respondent testified that he had three brothers and one sister, although he did not know their dates of birth nor their ages. The respondent explained that he has had no contact with his family for about 10 years, that his mother, Lizzie Miles, died when he was 17

5

years of age, that he was raised by his grandmother, and that his siblings were raised by relatives in South Carolina, whom he only rarely saw. When questioned by Service counsel whether his grandmother, Charlotte Campbell, or his aunt, Victoria Cutler, could verify his identity and citizenship, the respondent replied that he has not seen his grandmother since his arrest and incarceration in 1993, and has no reply to the letters he has written his aunt. While the respondent also testified that a family friend, Virginia Cutler, may also be able to verify his identity, the respondent also related that he has been unable to successfully communicate with her.

The respondent admitted that he has visited Jamaica yearly since the mid-1980's, but has never traveled on a Jamaican passport. When asked to explain the Jamaican passport in his name retrieved from his apartment, the respondent explained that he acquired this passport around 1984 when he planned to travel to the Middle East to visit Mecca, a requirement of his religion at least once during his life. The respondent further explained that he intended to use the Jamaican passport instead of a U.S. passport in order to avoid potential trouble traveling to that area of the world, given the high degree of anti-American unrest, but that the trip never took place. The respondent related that he received assistance from a Jamaican citizen, "Junior Ricketts," who was a member of a Moslem organization which helped American Moslems. According to the respondent, this "Mr. Ricketts," who was the bearer of the original Jamaican passport which had been partially burned, gave him his (Mr. Rickett's) Jamaican birth certificate, which the respondent used to apply for the issuance of a Jamaican replacement passport, which in fact was issued by the Jamaican Consulate in New York.

The respondent went on to testify that the reasons for his numerous trips to Jamaica were to visit a son he had living there with his former girlfriend from high school, and to write articles for a Jamaican organization which held musical events in Jamaica. When questioned about his 1992 criminal conviction, the respondent admitted that he pleaded guilty to embezzlement of money from homeless persons and AIDS victims, illegal entry, harboring an illegal alien, misuse of a social security card, and unlawful transport of a Jamaican minor for improper sexual purposes. The respondent added, however, that he was under duress at the time of his guilty plea, and wanted to spare innocent people any further ordeals from his fighting the criminal charges. In essence, the respondent denied any factual culpability underlying the charges, except those charges relating to embezzlement. When questioned about the information contained in the pre-sentence report drafted by the federal probation department in 1994, while admitting that he told the official he was an identical twin, he denied telling the official that he lived in St. Ann's, Jamaica, for eight years with his mother, Keturah Campbell, after she left his father, David Ricketts. According to the respondent, most of the biographical information contained in that pre-sentence report was independently compiled by the probation office without his assistance, and was inaccurate. It is to be noted that the respondent did not indicate the source of the biographical information reflected in the pre-sentence report, appended to this record at group exhibit 9-B (at pg 21, ¶s 105-106 of the report), if in fact he did not provide such information.

First, the court has listened closely to the witnesses in this case, including the respondent. While the court could not observe the Service's two witnesses, Mr. Hittelman and Mr. Hoey, given that their testimony was telephonic, the court could discern nothing from their testimony which raised the specter of untruthfulness or attempts to mislead. When the witnesses were asked questions by the respondent, they both replied forthrightly and made efforts to answer fully. In all respects these witnesses have been adjudged credible. Not so the respondent.

6

The Service's case, at first complicated, turns out to be rather simple. The Service believes that this respondent was born in Jamaica as "Junior Ricketts," came to this country with an non-immigrant visitors visa, and while working as an employee of New York City's Welfare Department, accessed the birth records and other identity of "Paul Milton Miles," born in New York City. With this birth certificate, he petitioned a state court to have his named changed, ostensibly for religious reasons, to "Junior Mohammed Ricketts." And this is the name he has used ever since. On the other hand, the respondent essentially contends that he is in fact "Paul Milton Miles," a United States-born citizen, who changed his name, for religious reasons, to "Junior Mohamed Ricketts," and who obtained a false Jamaican passport to conceal his U.S. citizen identity when he had planned to travel to Mecca in 1984.

The court closely observed the respondent under oath, and listened intently to him during his testimony, both during questioning by Service counsel and by this court. A few observations are pertinent. It is obvious that this respondent is intelligent and articulate. But his downfall lies in his believing that he created an airtight identity as a United States citizen, but when confronted with questions or evidence suggesting otherwise, his demeanor switched to one of smiling when he thought the question asked was ridiculous, to rather condescending when a question became uncomfortable for him to answer. At numerous points during the hearing, the court also observed the respondent struggling to answer questions, as if vainly attempting to recall pertinent facts from memory to corroborate his claim. At one point the respondent contemplated refusing to answer further questions by Service counsel, but thought better and answered the questions. But above and beyond his telling demeanor, the respondent has revealed himself with his nonsensical or outright conflicting testimony.

If, as the respondent contends, he was born "Paul Milton Miles," one would think that documents gathered over his lifetime would be presented to establish his identity and citizenship, and to have witnesses come forward to corroborate such facts. But this record is completely devoid of such evidence. at least prior to the time of his name change in July 1984. Further, and crucially, the respondent should be expected to know specific information concerning his family, but he appears not to know very much, and what he did testify about is highly questionable. Now, the respondent wants this court to believe that since his family was poor, on welfare, and that the children were split up to be raised by distant relatives, he could not know some of the facts concerning his family. Certainly such information, if true, may account for a certain degree of ignorance on the respondent's part, but not to the degree of his ignorance of such information during his hearing before this court. Fort example, when Service counsel inquired into the names and ages of his siblings, the respondent first testified that he only knew that he had siblings when an aunt, Victoria Cutler, told him so. However, the respondent testified that he lived with and was raised by his grandmother, Denise Campbell, since he was about 12 years old. Why would it be left to an aunt to inform the respondent of the fact that he had brothers and sisters, and not his grandmother, since such children would be her grandchildren?

More importantly, the respondent later testified that when he was about 16 years old the family was split up, with his siblings going to live in Charleston, South Carolina, with extended relatives. Which is it? Did he live with his siblings until the age of 16, or was he told at some point while living with his grandmother since the age of 12 that he had siblings? Further, the respondent admitted that he was an identical twin with one of his brothers. But when repeatedly asked the ages of his siblings, he could not even venture a guess. Certainly the age of at least one brother must have been known, that of his twin. The court believes that the respondent had forgotten that he had provided this information years earlier to a probation officer who had drafted a pre-sentence report on the respondent. Exhibit 9-

B. And that brings up a crucial aspect concerning his grandmother, who the respondent indicated was named "Denise Campbell." Only a few minutes after relating this information to the court, the respondent referred to his grandmother as "Charlotte Campbell." Further, the same pre-sentence report discussed above indicates that the Jamaican Consulate provided a certified copy of the birth certificate relating to "Junior Nathaniel Ricketts," wherein it is indicated that the mother is "Viola Campbell." The court finds it interesting that the respondent would testify before the court that his grandmother's surname is "Campbell," especially where he alleges that his parents' names were "Lizzie May Page (maiden) Miles" and "Robert Miles." Where did his grandmother's surname of "Campbell" originate? The court will answer it's own question. It originated in Jamaica, where the respondent was born, and as reflected by his real birth certificate in this record, wherein it is clearly revealed.

Now, the respondent made much of the fact that the "Lizzie May Miles" interviewed by Mr. Hoey was not in fact his mother, and that the Service's evidence relating to the information supplied by this lady is irrelevant. Further, the respondent has sought the court to compel the presence of this lady before taking cognizance of the information she gave to Mr. Hoey, and that no proof of her actual identity and citizenship was established by Mr. Hoey during his investigation and interview of this lady. Essentially the respondent contends that this woman had no knowledge about him because he is not the same "Paul Milton Miles" as her son., and that the New York City Department of Investigation, who Mr. Hoey worked for, mistakenly presumed her to have such knowledge. However, given the testimony of Mr. Hoey, the court saw no need to attempt to subpoena Mrs. Miles to testify, as repeatedly requested by the respondent. The court is satisfied with the evidence gleaned by Mr. Hoey from this lady, and while such evidence is hearsay in nature, the court has found it's use to have been fundamentally fair in this hearing. See Matter of Grijalva, 19 I&N Dec. 713 (BIA 1988).

As background context in this regard, the respondent was employed by the welfare department in New York City in a capacity which gave him unfettered access to client files. As Service counsel pointed out, the pre-sentence investigation report in this record, to which this court attaches great weight, reveals that the respondent not only used his official position to embezzle over $110,000. from homeless people and AIDS victims, but also to use identity documents from the welfare department files to bring juvenile Jamaican males into the United States for illicit purposes, and to illegally use alien registration receipt cards. Given this unsavory history, can it be much of a leap for the respondent to obtain a birth certificate from a long-term welfare recipient with numerous children, use that document to effect a name change, ostensibly for religious reasons, and then assume that person's identity and citizenship? The answer is no. And had he been a tad more careful, he would have gotten away with it. However, one of the juveniles the respondent illegally brought to the United States, and who accused him of unwanted sexual acts, went to law enforcement authorities after the respondent's arrest for embezzlement to complain that he was smuggled by the respondent into the United States. A search of the respondent's apartment thereafter revealed a Jamaican passport, which, when investigated, led the investigators on the trail to eventually prove the respondent's smuggling endeavors and false claim of U.S. citizenship.

In this regard, Mr. Hittelman testified that he took this Jamaican passport to the Jamaican Consulate, where it was confirmed to have been issued in error as based on a false Jamaican birth certificate. However, the passport had been issued as a replacement for the original, which was still in possession of the Consulate, and whose biographical page had been burned. Convenient. The replacement passport, found in the respondent's apartment, specifically endorsed the original passport,

8

which had been valid, and which contained numerous entries and exits from the United States between 1980 and 1981. The respondent, of course, denied ever using this passport, and testified that he obtained it from the real "Junior Ricketts," a Moslem, intending to use it to safely travel to Mecca. The court presumes the respondent intended to leave the United States on this passport, and to travel abroad and return with it to the United States. Hopefully the respondent would have put more thought to the matter in 1984 before he attempted this bit of travel. That is, how would the respondent depart the United States with a Jamaican passport, and more importantly, how would he manage to reenter with it? That was not stated by the respondent, and the court is left to speculate. Also of interest, and very revealing, are the birth certificates of all the children of Lizzie May (Page) Miles, which reveal that they were born on "Lafayette Street" in Brooklyn, New York. The certificate of live birth presented by the respondent to the state court in 1984 to effect his name change, reflects his place of birth as "Lafayette Street, Brooklyn NY." The respondent has not explained this "coincidence." That is, if, as the respondent contends, he is a U.S. citizen, and the information on the name change application is correct, then he must have been born on "Lafayette Street" in Brooklyn. All of the children of Lizzie May (Page) Miles were born at that location, too, and Mrs. Miles was a welfare recipient at the time the respondent was an employee of that agency, with unfettered access to all client files. This court is not willing to accept these facts as mere "coincidences," but as very revealing pieces of the puzzle. See group exhibit 9-A.

Importantly, an investigation of the respondent's identity was undertaken, to a point, by the probation office when it prepared the extensive pre-sentence report for the federal court, and which has been referred to several times by this court.. This document reveals, and as testified to by Mr. Hoey, that Lizzie May (Page) Miles could not identify a photograph of the respondent, denied that the respondent's photograph was that of her son, Paul Milton Miles, but identified the valid birth certificate of her son, Paul. However, the lady could not identify the name change reflected on the birth certificate of "Junior Mohammed Ricketts." Further, the New York City Department of Investigation obtained a photograph of "Paul Milton Miles" from the city's police files; it did not match the respondent.

While it was not asked of the respondent, it must be asked here. If the respondent, as he maintains, changed his name for strictly religious reasons, why did he change it to the same name as the person who supposedly supplied him with that person's birth certificate to be used in obtaining a false Jamaican passport? The middle name "Mohammed" makes sense, given that the respondent is ostensibly of the Moslem faith, but completely shedding the name of "Paul Milton Miles" for that of "Junior Mohammed Ricketts," particularly under these rather peculiar circumstances, is not logical.

Two other points. While the respondent testified that much of the biographical evidence in the federal pre-sentence report is faulty, and that he did not supply such information, it is to be noted that the respondent's attorney, during the federal sentencing hearing, had no objections, changes, or modifications to the information contained in that pre-sentence report. This is set forth in the transcript of that hearing, at page 8, which has been appended in full to this record as court exhibit A. And second, the respondent admitted during his federal sentencing hearing that "Jerome," the child he had claimed as his United States citizen son, is not his biological child, although he had been led to believe otherwise by the child's mother. See pages 8; 11-21 of the hearing transcript. The court only points out this bit of information because one of the documents submitted by the respondent is exhibit 8, a U.S. Consular Report of Birth Abroad for "Jerome Peter Junior Ricketts, Jr." and naming "Junior Mohammed Ricketts" as his father. Stated another way, the respondent has offered this document in an effort to show that the United States government recognizes him, the respondent, as a United States citizen.

9

Given the evidence that this child is not the respondent's biological child, and due to the high degree of uncertainty as to the child's identity as reflected in the federal sentencing transcript, no weight has been given this document by this court.

There are numerous other inconsistencies and other problems with this respondent's claim, as succinctly enumerated by Service counsel during the hearing and in his summation. However, the court has chosen to touch only on the "highlights" of such evidence. To this end this court finds that the Service has sustained its burden of proof of establishing "alienage" in this case by evidence that is clear and convincing; that is, that the respondent is not in fact a citizen of the United States. Certainly that burden was made easier by the respondent's testimony, most of which is deemed incredible and otherwise unworthy of belief. The respondent has failed in his burden to offer rebuttal evidence of such scope to overcome the Service's evidence. All the respondent has accomplished in this regard is to attack the Service's evidence, rather than offer documents which this court could view to establish his citizenship of this country. In essence, the respondent has asked this court to disbelieve both of the Service's witnesses, to discount the evidence gleaned by Mr. Hoey in his interview with Lizzie May (Page) Miles, to reject the information contained in the federal pre-sentence report, to believe him when he denies most criminal culpability for which he pleaded guilty and for which he served a substantial amount of time in prison, and to overlook the fact of the dearth of material evidence pointing to his claim of U.S. citizenship. Again, not one document referencing his identity has been submitted by the respondent that was drafted prior to the respondent's name change in 1984. The documents that were submitted are insufficient to prove his case and to overcome the Service's evidence, which the court finds to be reasonable, substantial, and probative.

Finally, the respondent has made repeated motions for this court to exclude the introduction of the Jamaican passport into the record as evidence, which the respondent contends was taken from his apartment in violation of his constitutional rights. The court, however, rejected the respondent's motion in this regard. First, given that it was obtained by the New York City Department of Investigation, and only turned over to the Service later on, it is doubtful that this court has the jurisdiction to rule on this motion given such context. More importantly, there is no evidence in this record of any "egregious" violations of his Fourth Amendment rights. In INS v. Lopez-Mendoza, 468 U.S. 1032 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule does not apply in deportation proceedings, although the court left open the possibility that the exclusionary rule might still be properly invoked by an alien where his arrest involved "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." Id. at 1050-1. See also Matter of Cervantes, 21 I&N Dec. 351, 353 (BIA 1996).

This respondent has shown himself to pose a danger to society, and is made more so by virtue of his intelligence and the lengths he will go to satisfy his needs and to perpetuate his frauds. The documentary evidence reveals that he preys on the economically hapless, the seriously ill, and the young, to his perverted benefit. Evidence suggests the respondent has a degree of mental instability which is in need of medical intervention. However, such fact, to whatever extent, has no bearing on this case, and the court is highly confident that the respondent fully understood the nature of these proceedings and that he meaningfully participated in his case. It is hoped that the respondent will avail himself of such assistance, once he finds himself back in Jamaica. While the court is not happy at the prospect of the respondent's potential danger to Jamaican society, particularly to juvenile males, it is clearly evident that he has wrecked more than enough damage on the citizens of this country to warrant

his removal from the United States as expeditiously as possible.

The following orders are hereby entered.

ORDER.  The grounds of removal set forth by the Service against the respondent are hereby found to be sustained by clear and convincing evidence.

FURTHER ORDER: The respondent is hereby ordered removed from the United States to Jamaica pursuant the  grounds of removal as set forth in his respective charging documents.

Walt Durling
Immigration Judge

November 3, 1999

INVESTIGATIONS DIVISION

TO: FILE                              DATE:  12/21/92

FROM:  ALICE CUBILLOS          RE:  CASE NUMBER: 92-58
       CONFIDENTIAL INVESTIGATOR          CASE NAME:JUNIOR
                                                   RICKETTS

## MEMORANDUM OF INTERVIEW

Date of interview: 12/21/92

Time began: 10:45 am               Time Ended: 11:15 am

Location:  IMC #64 500 Dekalb Ave. Brooklyn, NY  11205

Names and titles of persons present:  D/I/G Gerrard Hoey
                                       CI Alice Cubillos
                                       Lizzie Miles

IF recorded, tape number:

Name of person interviewed:  Lizzie Miles

Occupation: unemployed

Current Employer:                   No.of years employed:

Work Address:                       Phone: no phone

Home Address:  702 Halsey street, brooklyn, NY  11205

SSN:             Date of Birth:          Place of Birth:

Marital Status:     Spouse's Maiden Name:

SSN:             Date of Birth:          Place of Birth:

## SUMMARY OF INTERVIEW

At the start of the interview Lizzie Miles was shown a
photograph of Junior Ricketts and was asked if she recognized him
as one of her sons.  She stated that she had never seen that person
before and had no idea if he was one of her sons' friends because
she had not been in contact with her five children from her first
marriage in several years.  Lizzie Miles was shown a copy of Paul
Miles' birth certificate with a legally changed name to Junior
Ricketts and she stated that she recognized the document as that of
her son Paul Miles but had no idea who Junior Ricketts was.  She
claimed she has not seen or heard from her son Paul since he left
home in 1986 and has no way of contacting him.  Furthermore, she

had no idea how Junior Ricketts had obtained her son Paul Miles'
birth certificate.  She stated that she now resides with her three
youngest children at the above address for the last several years.

TO:        David Lopez
           Probation Officer
           Southern District of New York

FROM:      Gary Hittelman
           Immigration & Naturalization Service
           New York, New York

SUBJECT:   United States v. Junior Ricketts
           92 CR 927
           Identity of Defendant

DATE:      January 11, 1993

           INS Form I-94, Arrival Record, is a document prepared by
an alien applicant for admission into the United Stats (or someone
acting in his behalf) and along with the applicant's passport is
presented to the inspecting immigration officer at a U.S. port of
entry.

           INS Forms I-94, Arrival Records, copies attached as
Exhibit "A", reflect that Junior Nathaniel Ricketts, born October
12, 1955 in St. Andrew, Jamaica and bearer of Jamaican passport No.
114877 was admitted to the United States as a visitor on May 5,
1980, July 23, 1980, May 20, 1981, July 5, 1981 and August 23,
1981.  Each arrival record consistently shows Ricketts' name, date
and place of birth and passport number exactly the same.

           Subsequent to his entries into the United States,
Ricketts assumed the United States citizen identity of Paul Milton
Miles, born on August 31, 1964 in Brooklyn, New York.   The
certificate of birth of Paul Milton Miles is attached as Exhibit
"B".

           On May 11, 1984, Ricketts applied for a United States
passport in his assumed United States citizen identity of Paul
Milton Miles.  A copy of the relating passport application, with
photo, is attached as Exhibit "C".

           On May 23, 1984, Ricketts was issued United States
passport number 060041569, copy attached as Exhibit "D", in the
identity of Paul Milton Miles.

           On July 7, 1984 Ricketts, in his assumed identity of Paul
Milton Miles, petitioned in Civil Court, Kings County to have "his"
name changed to Junior Mohammed Ricketts.  A copy of the order,
dated August 22, 1984 ordering the name change is attached as
Exhibit "E".

           On August 23, 1984, Ricketts filed Form DSP-19,
Application to Amend Passport, with the Passport Office of the
Department of State, specifically to amend "his" name from Paul
Milton Miles to Junior Mohammed Ricketts.  The request to amend was
approved on August 28, 1984 and the passport was so amended.  A

copy of this application is attached as Exhibit "F".

Ricketts was arrested on October 16, 1992 in the instant case and a court authorized search warrant was executed at his residence, 375 Pine Street, Brooklyn, New York. Thereafter, Ricketts signed a consent to search and New York City Department of Investigation personnel returned to Ricketts' residence to search the premises again. On that occasion, they located Jamaican Passport No. 565227, issued June 24, 1983 at the Jamaican Consulate General in New York. Page 5 of the passport is endorsed "Bearer previously travelled on Jam. Passport No. 114877 dated 10-4-80 issued at Jam. valid until 9-4-90 which has been cancelled and retained." The passport is issued in the name Junior Nathaniel Ricketts and bears the defendant's photo. However, the birth date reads October 12, 1965 rather than 1955. A copy of the relevant part of this passport is attached as Exhibit "G".

On January 7, 1993 the writer met with Effie Stewart, Consul, at the Consulate General of Jamaica, 866 Second Avenue, New York, New York. Ms. Stewart showed the writer Ricketts' original Jamaican passport, number 114877 which had been partially burned. Specifically, the edges of all the pages were charred and the biographical page was half burned so that the only remaining entry is the last two digits of the year of birth which was altered to read 65 from what was originally 55. Moreover, Ms. Stewart advised that upon review of the documents Ricketts had submitted at the time, the Consulate should not have issued the replacement passport. She pointed out the alteration of the year of birth in the burned passport (#114877) as well as a fraudulent birth certificate that was submitted in support of Ricketts' application for the new Jamaican passport. A copy of the relevant part of Jamaican passport number 114877 is attached as Exhibit "H". A copy of Ricketts' application to replace his Jamaican passport is attached as Exhibit "I".

Gerard Hoey, Deputy Inspector General, New York City Department of Investigation, advised the writer that on December 28, 1992 at 702 Halsey Street, Brooklyn, New York, he interviewed Lizzie Mae Page, the mother of Paul Milton Miles, as reflected on his birth certificate. Ms. Page stated that she has not had contact with her son since 1986. Shown a photo of the defendant Junior Nathaniel Ricketts, she stated that he was not her son.

Ricketts continues to falsely maintain that he is Junior Mohammed Ricketts, having changed his name from Paul Milton Miles and that he was born on August 31, 1964 in Brooklyn, New York. When he pled guilty on December 17, 1992 before Judge Wood he misrepresented his age to the court. In response to the court's question as to his age he stated that he was 29.



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

RICKETTS, JUNIOR NATHANIEL
600 OLD COLONY ROAD
SELINSGROVE, PA 17870-0000

INS LIT./York Co. Prison/YOR
3400 Concord Road
York, PA 17402

COPY

Name: RICKETTS, JUNIO NATHANIEL

A27-024-434

<u>D</u>ate of this notice: 03/08/2000

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

Paul W. Schmidt
Chairman

Enclosure

RECEIVED DEPARTMENT OF JUSTICE 2000 MAR 13 A 7 11

Panel Members:
JONES, PHILEMINA M.
THOMAS, ELLEN K.
VACCA, FRED W.

**Exhibit B**

ANDREWSD

File:   A27 024 434 - York

Date:   MAR - 8 2000

In re:   JUNIOR NATHANIEL RICKETTS a.k.a. Junior Mohammed Ricketts, a.k.a. Paul Milton Miles

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Pro se

ON BEHALF OF SERVICE:   Jeffrey T. Bubier
Assistant District Counsel

CHARGE:

Notice:   Sec.   237(a)(1)(A), I&N Act [8 U.S.C. § 1227(a)(1)(A)] - Inadmissible at the time of entry or adjustment of status under section 212(a)(7)(A)(i)(I), I&N Act [8 U.S.C. § 1182(a)(7)(A)(i)(I)] - Immigrant - no valid immigrant visa or entry document

Sec.   237(a)(1)(B), I&N Act [8 U.S.C. § 1227(a)(1)(B)] - In the United States in violation of law

Sec.   237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] - Convicted of aggravated felony

Sec.   237(a)(3)(D), I&N Act [8 U.S.C. § 1227(a)(3)(D)] - False claim of United States citizenship

APPLICATION:   Termination

The respondent's appeal of the Immigration Judge's decision finding him to be a citizen and national of Jamaica and ordering him removed from the United States will be dismissed.

The respondent in this case asserts that the Immigration Judge erred in finding that he is a citizen and national of Jamaica. The respondent maintains that he was born in the United States on August 31, 1964. As such, the respondent claims that he is a United States citizen. The respondent also

argues that the Immigration Judge abused his discretion in admitting certain documents into the record of proceedings obtained in violation of his rights under the Fourth and Fifth amendments of the United States Constitution.

The respondent was convicted on January 9, 1995, of illegal entry and harboring aliens in the United States in violation of 8 U.S.C. § 1324(a)(1)(D). The respondent was also convicted of embezzlement of funds from a federally funded government agency, fraud and misuse of an alien registration card, and illicit transportation of a minor with the intent to engage in sexual activity, in violation of 8 U.S.C. §§ 666(a)(1)(A), 1546, and 2423. As a result of these convictions the Immigration and Naturalization Service served the respondent with a Notice to Appear (Form I-862) and charged him with deportability under sections 237(a)(1)(A), 237(a)(1)(B), 237(a)(2)(A)(iii), and 237(a)(3)(D), of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(1)(A), 1227(a)(1)(B), 1227(a)(2)(A)(iii) and 1227(a)(3)(D). We note that the respondent does not contest the allegations that he was convicted or that the convictions are deportable offenses, instead, the respondent contests the Service's allegation that he is an alien.

The respondent in this case maintains that he was born Paul Milton Miles, son of Lizzie Mae Page and Robert Miles, in Brooklyn, New York. In support of this contention the respondent provided a copy of a birth certificate, United States passport, drivers license, credit report, educational records, and name change petition. The Immigration and Naturalization Service disputes the respondent's citizenship claim and charges that he is, in fact, a native and citizen of Jamaica. The Service asserts that while working for the New York City Human Resources Administration the respondent illegally obtained the records of the real "Paul Milton Miles," a United States citizen, and assumed his identity. The Service presented the testimony of Gary Hittelman, a retired Service Special Agent, and Gerard Hoey, Deputy Inspector General of the New York City Department of Investigation in support of their claim. Citing the respondent's lack of credibility, the Immigration Judge found that the respondent was not a United States citizen. The Immigration Judge, instead, concluded that the respondent was a native and citizen of Jamaica, and ordered him removed from the United States.

Neither the Immigration Judge nor this Board have the authority to deport a United States citizen. See Trop v. Dulles, 356 U.S. 86 (1957); Matter of Fuentes, 21 I&N Dec. 893, 898-99 (BIA 1997). Nevertheless, we concur with the Immigration Judge's conclusion finding that the respondent's claims to United States citizenship lack credibility (I.J. at 7). The respondent in this case presented inconsistent evidence in support of his claim to citizenship. For example, the respondent presented evidence that he legally changed his name from "Paul Milton Miles" to "Junior Mohammed Ricketts" in 1984. When confronted by the Service with the fact that the name "Junior Nathaniel Ricketts" appeared on a Jamaican passport found in his apartment the respondent testified that the passport had been obtained for him in 1984 by a Jamaican man named Junior Ricketts (Tr. at 187).

We find that the above discrepancy, along with many others detailed by the Immigration Judge in his written decision, provide specific and cogent reasons to support the Immigration Judge's conclusion that the respondent's claim lacks credibility. We note that a convincing explanation for these discrepancies has not been supplied by the respondent. Consequently, we will accord deference to the Immigration Judge's findings concerning the respondent's lack of credibility in this case. See Matter of A-S-, 21 I&N Dec. 1106 (BIA 1998).

Alternatively, we note that the Service has provided ample credible evidence showing the respondent to be a native and citizen of Jamaica. As noted above the Service provided a copy of the respondent's Jamaican passport, bearing his picture and signature. The Service also included copies of numerous arrival departure records (Form I-94) for a Junior Nathaniel Ricketts bearing the same identification number contained in his Jamaican passport. In light of the overwhelming evidence contained in the record we will affirm the Immigration Judge's decision in this case and find that the respondent is a native and citizen of Jamaica.

We reject the respondent's motion to suppress. Absent a showing of widespread abuse or an egregious violation that transgresses notions of fundamental fairness, an alien in immigration proceedings cannot suppress evidence assertedly procured in violation of his rights under the United States Constitution. See INS v. Lopez-Mendoza, 468 U.S. 1032 (1984). A motion to suppress must provide specific details of the Constitutional violation. See Matter of Barcenas, 19 I&N Dec. 609 (BIA 1988). In this case there is little evidence to support the respondent's assertions that the documentary evidence was procured in violation of his Constitutional rights. As such, we deny the respondent's motion to suppress. Accordingly, the following order shall be entered.

ORDER: The respondent's appeal is dismissed.

_____
FOR THE BOARD

**U.S. DEPARTMENT OF JUSTICE**
Executive Office for Immigration Review
Office of the Immigration Judge



In the Matter of:

Ricketts, Junior N.

AKA Miles, Paul M.

**RESPONDENT**

Case No.: A 27 - 024 - 434

Docket: York, Pa

IN ~~DEPORTATION~~ PROCEEDINGS

Removal

## ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on _____
This memorandum is solely for the convenience of the parties. If the proceedings should be appealed, the Oral Decision will become the official decision in this matter.

[X] The respondent was ordered deported to Jamaica _____

[ ] Respondent's application for voluntary departure was denied and respondent was ordered deported to _____ or in the alternative to _____

[ ] Respondent's application for voluntary departure was granted until _____, with an alternate order of deportation to _____ or _____

[ ] Respondent's application for asylum was ( )granted ( )denied ( )withdrawn ( )other.

[ ] Respondent's application for withholding of deportation was ( )granted ( )denied ( )withdrawn ( )other.

[ ] Respondent's application for suspension of deportation was ( )granted ( )denied ( )withdrawn ( )other.

[ ] Respondent's application for waiver under Section _____ of the Immigration and Nationality Act was ( )granted ( )denied ( )withdrawn ( )other.

[ ] Respondent's application for _____ was ( )granted ( )denied ( )withdrawn ( )other.

[ ] Proceedings were terminated.

[ ] The application for adjustment of status under Section (216)(216A)(245)(249) was ( )granted ( )denied ( )withdrawn ( )other. If granted, it was ordered that the respondent be issued all appropriate documents necessary to give effect to this order.

[ ] Respondent's status was rescinded under Section 246.

[X] Other Claim to US citizenship not proven.

[ ] Respondent was advised of the limitation on discretionary relief for failure to appear as ordered in the Immigration Judge's oral decision.

_____
Immigration Judge

Date: 11-3-99

Appeal: RESERVED/WAIVED (A)/I/B) December 3, 1999

Form EOIR - 37
REV. - JUNE 93

ORIGINAL

FORM A

(Section 12)

# BIRTH REGISTRATION FORM

1. BIRTH IN THE DISTRICT OF KINGSTON

2. PARISH KINGSTON

3. No. AA 4608

Do not write in this margin

| | | | |
|---|---|---|---|
| 4. Place of Birth | VICTORIA JUBILEE LYING IN HOSPITAL | | USUAL RESIDENCE OF MOTHER |
| 5. Date of Birth | Twelfth October 1965 | 13. (a) Residence | 27 Maiden Lane |
| 6. Sex | Male | (b) Town or Village | |
| 7. Name of Child | | (c) Parish | Kingston |
| 8. Physician or registered midwife in attendance | M. Hathuson R.N. | 14. No. of Children previously born to mother (a) Alive (b) Still-born | nil |

| | FATHER | | MOTHER |
|---|---|---|---|
| 9. Name and Surname | | 15. Name and Maiden Surname | Keturah Campbell |
| 10. Age at time of birth......years | | 16. Age at time of birth......years | 39 |
| 11. Occupation | | 17. Occupation | nil |
| 12. Birthplace | | 18. Birthplace | St. Ann |

INFORMANT

| | | | |
|---|---|---|---|
| 19. Name and Surname | | 21. (a) Residence | |
| | | (b) Town or Village | |
| 20. Qualification | | (c) Parish | |

REGISTRAR'S CERTIFICATE

22. (a) Signed in my presence by the said informant;
   (or)
   (b) Entered by me from the particulars on a Certificate received from M. Lewes Daly for Chief Resident Officer

23. Village

24. Date Fifteenth October 1965

25. (Signed) ............ Deputy Registrar

(7) NAME IF ADDED AFTER REGISTRATION OF BIRTH

26. Name Junior Nathaniel Ricketts as added Eighth December 1965

Authority Certificate of Naming



OUT OF MANY, ONE PEOPLE

*The Minister of Foreign Affairs requests and requires in the name of the Government of Jamaica all those whom it may concern to allow the bearer to pass freely without let or hindrance, and to afford the bearer such assistance and protection as may be necessary.*

565227

1

This Passport contains 48 pages
Ce Passeport contient 48 pages
Este Pasaporte contiene 48 páginas

# PASSPORT
# PASSEPORT
# PASAPORTE
# JAMAICA

No. of passport.
No. du passeporte     565227
No. del pasaporte

Name of bearer    *Mr. Junior*
Nom du titulaire
Nombre del titular   *Nathaniel* RICKETTS

Accompanied by his wife.
(Maiden Name)
Accompagné de sa femme
(Née)
Acompañado de su esposa
(Apellido de soltera)

end by
et de                children
y de                  enfants
                       niños

National status        Nationalité        Nacionalidad

Citizen of Jamaica and Commonwealth Citizen

## DESCRIPTION – SIGNALEMENT – SEÑAS PERSONALES

|  | Bearer – Titulaire – Titular | Wife – Femme – Esposa |
|---|---|---|
| Profession / Profession / Profesión | Student | |
| Place and date of birth / Lieu et date de naissance / Lugar y fecha de nacimiento | Kingston JAMAICA / 12R October 1965 | |
| Country of Residence / Pays de Résidence / País de Residencia | JAMAICA | |
| Height / Taille / Estatura | 5 ft. 9 in.5 / mtr. cms. | ft. in. / mtr. cms. |
| Colour of eyes / Couleur des yeux / Color de los ojos | Brown | |
| Colour of hair / Couleur des cheveux / Color de los cabellos | Black | |
| Special peculiarities / Signes particuliers / Señas particulares | | |

CHILDREN – ENFANTS – NIÑOS

| Name – Nom – Nombre | Date of Birth – Date de naissance Fecha de nacimiento | Sex – Sexe – Sexo |
|---|---|---|

Usual Signature of Be
Signature du Titulaire
Firma del Titular

Usual Signature of W
Signature de sa Femme
Firma de su Esposa

Bearer
Titulaire
Titular



3



Form I-215B
(Rev. 9-1-72)Y

UNITED STATES DEPARTMENT OF JUSTICE

IMMIGRATION AND NATURALIZATION SERVICE

RECORD OF SWORN STATEMENT IN AFFIDAVIT FORM

# AFFIDAVIT

IN RE: **Junior RICKETTS**      FILE NO. A27 024 434

EXECUTED AT: **Hudson Corr. Fac., Hudson, NY**  DATE: *April 22, 2005*

Before the following officer of the U.S. Immigration and Naturalization Service:

in the ___*English*___ language. Interpreter NOT used.   **CONSTANTIN BELYAYEV, Special Agent, US ICE**

---

I, Junior RICKETTS, acknowledge that the above-named officer has identified himself to me as an officer of the United States Immigration and Naturalization Service, authorized by law to administer oaths and take testimony in connection with the enforcement of the Immigration and Nationality Laws of the United States. He has informed me that he desires to take my sworn statement regarding <u>my reentry into the United States after my removal under an order of deportation, exclusion, or removal.</u>

He has told me that my statement must be freely and voluntarily given and has advised me of these rights:

"You have the right to remain silent.

Anything you say can be used against you in court, or in any immigration or administrative proceeding. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed to you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

I am willing to make a statement without anyone else being present. I swear that I will tell the truth, the whole truth, and nothing but the truth, so help me, God.

**Being duly sworn, I make the following statement:**

Q: What is your true and correct name?

A: Junior MohAMMED Ricketts

Q: Have you ever used any other names?

A: YES, Paul Milton Miles. Also the name Junior NAThAuiEL Ricketts AppeAred iN A FALSE JAMAICAN pAssport I hAD BEFORE.

Q: Of what country are you a citizen?

A: I claim to Be a United States Citizen.

Q: What is your date and place of birth?

A: 8/31/64, Brooklyn, New York.

Q: When did you last enter the United States?

A: February 2003.

Q: How and where did you enter United States at that time?

A: I entered with the aid of the United States Embassy as a U.S. citizen through New York City / JFK Airport.

Q: Have you ever been ordered deported, excluded, or removed from the United States?

A: YES.

Q: After you were ordered deported, excluded, or removed, were you removed by the INS or did you leave the United States voluntarily?

A: I WAS REMOVED by INS.

Q: Have you ever applied to the Attorney General of the United States for permission to re-enter the United States after you were deported, excluded, or removed from the United States?

A: No, never.

Q: Do you have any fear of persecution or torture should you be removed from the United States?

A: WHERE would I go?

Q: Is there anything else that you would like to say at this time?

A: I just think someone went in and changed my personal records in the U.S. national files.

I have read (or have had read to me) the foregoing statement, consist ‑ ‑ 2 ‑ pages. I state that the answers made therein by me are true and correct to the best of my knowledge and belief and that this statement is a full, true and correct record of my interrogation on the date indicated by the above named officer of the Immigration and Naturalization Service. I have initialed each page of this statement [and the correction(s) noted on page(s)⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ].

Signature⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Subscribed and sworn to before me at <u>Hudson Corr. Fac.., Hudson, NY</u>

on _April 22, 2005_

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Officer, United States Immigration and Naturalization Service

Witnessed by:⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

# RECORD OF SWORN STATEMENT

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service
Form I-263A (Rev. 11-20-63)

# Record of Deportable/Inadmissible Alien

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|
| RICKETTS, Junior Nathaniel | | | | M | BLK | BRO | DRK |

| Country of Citizenship | Passport Number and Country of Issue | | | Height | Weight | Occupation |
|---|---|---|---|---|---|---|
| JAMAICA | NONE KNOWN | File No: XAY0505000015 | | 71 | 159 | ACCOUNTANT |
| | | Case No: XAY0505000015 A027 024 434 | | | | |

| U.S. Address 375 PINE ST. BROOKLYN, NEW YORK 11208 | | Scars and Marks See Narrative |
|---|---|---|

| Date, Place, Time, and Manner of Last Entry Unknown Date, Unknown Time, UNK, UNKNOWN | Passenger Boarded at | F.B.I. Number 684673EA7 | ☒ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated |
|---|---|---|---|

| Number, Street, City, Province (State) and Country of Permanent Residence UNKNOWN JAMAICA | Method of Location/Apprehension CAP 511.2.3 |
|---|---|

| Date of Birth 10/12/1965    Age: 39 | Date of Action 05/09/2005 | Location Code XBU/XAY | At/Near Hudson, NY | Date/Hour 04/22/2005 0900 |
|---|---|---|---|---|

| City, Province (State) and Country of Birth KINGSTON, JAMAICA | AR ☒ | Form: (Type and No.) | Lifted ☐ | Not Lifted ☐ | By CONSTANTIN BELYAYEV |
|---|---|---|---|---|---|

| NIV Issuing Post and NIV Number N/A | Social Security Account Name RICKETTS, JUNIOR N | Status at Entry Other | Status When Found IN INSTITUTION |
|---|---|---|---|

| Date Visa Issued NONE KNOWN NONE KNOWN | Social Security Number 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 | Length of Time Illegally in U.S. AT ENTRY |
|---|---|---|

| Immigration Record POSITIVE - See Narrative | Criminal Record See narrative |
|---|---|

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) N/C | Number and Nationality of Minor Children CLAIMS 1 ADULT JAMAICAN CHILD |
|---|---|

| Father's Name, Nationality, and Address, if Known , Unknown | Mother's Present and Maiden Names, Nationality, and Address, if Known , Unknown |
|---|---|

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? Yes ☒ No ☐ | INS Systems Checks See Narrative | Charge Code Word(s) |
|---|---|---|---|

| Name and Address of (Last)/(Current) U.S. Employer MADSTON THEATRES, 6TH AVE., NY, NY | Type of Employment Administrative Support Occupations including Clerical | Salary Weekly 200.00 | Employed from/to 12/ /2003   12/ /2004 |
|---|---|---|---|

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

OTHER ALIASES KNOWN BY
RICKETTS, JUNIOR MOHAMMED
MILES, PAUL MILTON

SCARS, MARKS AND TATTOOS
None Visible

INS SYSTEMS CHECKS
Central Index System Positive
Interagency Border Inspection System Positive
National Crime Information Center Positive

Narrative Title: Record of Deportable/Excludable Alien
Narrative Created by BELYAYEV

On this date this Agent interviewed the SUBJECT at the Hudson Correctional Facility in Hudson, NY. The SUBJECT is incarcerated there under DIN # 04-R-4779 until 2/20/2007 pursuant to a conviction for Forgery and Grand Larceny.
A review of the SUBJECT's file indicated that he had been previously removed to Jamaica on 4/3/2000 pursuant to being convicted of various offenses under the United States Code. As such, the SUBJECT appeared amenable to prosecution for re-entry after deportation, 8

| Alien has been advised of communication privileges. _____ (Date/Initials) | CONSTANTIN BEL~~~ SPECIAL AGENT (Signature and Title of INS Official) |
|---|---|

| Distribution: 2 - FILE 1 - STATS | Received: (Subject and Documents) (Report of Interview) Officer: CONSTANTIN BELYAYEV on: May 9, 2005 at _____ (time) Disposition: REINSTATEMENT OF DEPORT ORDER I-871 Examining Officer: LEROY F. TARIO |
|---|---|

Form I-213(Rev.4/1/97)Y

| Alien's Name | File Number<br>Case No: XAY0505000015 | Date |
|---|---|---|
| RICKETTS, Junior Nathaniel | A027 024 434 | 05/09/2005 |

USC 1326. The SUBJECT was made aware of his Miranda rights, waived them and agreed to answer questions (see I-214).

The SUBJECT stated that he had, in fact, been deported to Jamaica. However, he also stated that he was a U.S. citizen by birth in Brooklyn, NY. The SUBJECT claimed that he had never applied for or received permission from the U.S. Attorney General to re-enter the U.S., however he stated that while in Jamaica, he was able to prove to the U.S. Embassy in Kingston that he was a U.S.C. The embassy then, allegedly, provided the SUBJECT with a "letter" which he presented to the U.S. authorities upon return. The SUBJECT claimed that he re-entered the U.S. in February 2003 via NYC/JFK and was admitted as a U.S. citizen. This Agent asked the SUBJECT why he needed a "letter" from the embassy versus his birth certificate, and the SUBJECT was unable or unwilling to provide a clear answer referring this Agent all the while to the U.S. Embassy records in Jamaica.

The SUBJECT also stated that while in Jamaica, he was detained by the Jamaican government from the first day he arrived. The SUBJECT initially stated that he was detained for one year. This Agent then asked the SUBJECT where he was for the other period of time (ca. 4/01 - 2/03). The SUBJECT then changed his story and claimed that he was detained for the whole time.

This Agent has, in the past, conducted over one thousand interviews with inmates of the NYS Department of Corrections and elsewhere. This Agent has spoken with many citizens of Jamaica and in this Agent's opinion the SUBJECT had a pronounced Jamaican accent. The accent was somewhat subdued, which would be consistent with someone who has lived in the U.S. for many years.

The SUBJECT claimed that he fathered one son. This Agent asked what the son's citizenship was and the SUBJECT replied, Jamaican. However, he quickly stated that his son's mother was Jamaican, that the SUBJECT had met her in high school, and that she returned to Jamaica and gave birth there. He also stated that the son had a certificate of a U.S. citizen born abroad.

The SUBJECT stated that he had appealed the Order of Removal to the 3rd Circuit Court of Appeals in Pennsylvania.

Prior to the SUBJECT being interviewed, Corrections Officer John R. LEONE, #2525, took the SUBJECT's fingerprints. They will be used for comparison with the executed Warrant of Deportation.

The SUBJECT was then served with an I-871 reinstatement of removal order. The SUBJECT refused to sign this document and actively resisted this Agent's attempt to place the SUBJECT's fingerprint on the I-871. As the SUBJECT was not in ICE custody, this Agent did not enforce the fingerprint in compliance with NYS DOCS.

A Certificate of Non-existence of Record has been ordered.

Upon return to the office, this Agent contacted the U.S. Embassy in Kingston, Jamaica, and spoke with Vice-Consul John GREGG. GREGG accessed his databases and stated to this Agent that the SUBJECT had, in fact, attempted to establish that he was a U.S. citizen and appealed to the embassy. However, on 9/25/2001 the SUBJECT's claim was denied. The U.S. Embassy had no further record of any attempts by the SUBJECT to claim U.S. citizenship.

This Agent also contacted the 2rd Circuit Court of Appeals. The clerk stated that the SUBJECT had appealed under case # 00-3270 on 3/21/2000. That case was closed on 7/31/2000 for failure to prosecute.

| Signature | Title |
|---|---|
| CONSTANTIN BELYAYEV | SPECIAL AGENT |

Form I-831 Continuation Page (Rev. 6/12/92)

| 'Alien's Name | File Number Case No: XAY0505000015 | Date |
|---|---|---|
| RICKETTS, Junior Nathaniel | A027 024 434 | 05/09/2005 |

A check of TECS revealed that an individual by the name of Junior RICKETTS, DOB: 8/31/1964, has traveled on several occasions to Jamaica as a U.S. citizen with several U.S. passports. Applications associated with those passports have been requested via the ICE office in Arlington, VA, I/A Darlene TAYLOR.

Fingerprints taken from the SUBJECT on the date of the interview have been submitted to the NYS DCJS for comparison with the original Warrant of Removal. Results are awaited. The case will be presented to the U.S. Attorney's Office, NDNY, for possible prosecution for re-entry after deportation, 8 USC 1326(b)(2), and false claims to U.S. citizenship, 8 USC 911.

| Signature | Title |
|---|---|
| CONSTANTIN BELYAYEV | SPECIAL AGENT |

Form I-831 Continuation Page (Rev. 6/12/92)

**U.S. Department of Justice**
Immigration and Naturalization Service

# Warrant of Removal/Deportation

File No:   A27 024 434

Date:   November 03, 1999

## To any officer of the United States Immigration and Naturalization Service:

Junior                                        RICKETTS
                                          (Full name of alien)

who entered the United States at _____ New York, Yew York _____ on _____ December 27, 1982 _____
                                              (Place of entry)                                    (Date of entry)

is subject to removal/deportation from the United States, based upon a final order by:

- ☒ an immigration judge in exclusion, deportation or removal proceedings
- ☐ a district director or a district director's designated official
- ☐ the Board of Immigration Appeals
- ☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:

Section 237(a)(1)(A), 237(a)(1)(B,) 237(a)(2)(A)(iii), 237(a)(3)(D) of the Act.

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Attorney General under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:

the appropriation "Salaries & Expenses, Immigration and Naturalization Service, 2000", including the expenses of an attendant if necessary.

M. Frances Holmes
(Signature of INS official)
Acting District Director
(Title of INS official)
November 03, 1999 / Philadelphia, PA
(Date and office location)

Form I-205 (Rev. 4-1-97) N

RIB

To be completed by Service officer executing the warrant:

Name of alien being removed:

Junior                                        RICKETTS

Port, date, and manner of removal: JFK; 04/03/2000 ; Air Jamaica FLt # 010
                                              02    April 03, 2000



Photograph of alien
removed



Right index fingerprint
of alien removed

_(Signature of alien being fingerprinted)_

DEO

_(Signature and title of INS official taking print)_

Departure witnessed by: _____ DEO

_(Signature and title of INS official)_

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____
_____
_____
_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.  ☐

Departure Verified by: _____

_(Signature and title of INS official)_

Form I-205 (Rev. 4-1-97) N

**U.S. Department of Justice**
Immigration and Naturalization Service

# Warning to Alien Ordered Removed or Deported

File No: A27 024 434

Date: November 11, 1999

Alien's full name: Junior RICKETTS

In accordance with the provisions of section 212(a)(9) of the Immigration and Nationality Act (Act), you are prohibited from entering, attempting to enter, or being in the United States:

☐ For a period of 5 years from the date of your departure from the United States because you have been found deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act initiated upon your arrival in the United States as a returning lawful permanent resident.

☐ For a period of 10 years from the date of your departure from the United States because you have been found:
  ☐ deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
  ☐ inadmissible under section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act initiated as a result of your having been present in the United States without admission or parole.
  ☐ deportable under section 241 of the Act and ordered deported from the United States by an immigration judge in proceedings commenced before April 1, 1997 under section 242 of the Act.
  ☐ deportable under section 237 of the Act and ordered removed from the United States in accordance with section 238 of the Act by a judge of a United States district court, or a magistrate of a United States magistrate court.

☐ For a period of 20 years from the date of your departure from the United States because, after having been previously excluded, deported, or removed from the United States, you have been found:
  ☐ inadmissible under section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
  ☐ deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
  ☐ deportable under section 237 of the Act and ordered removed from the United States in proceedings under section 238 of the Act.
  ☐ deportable under section 241 of the Act and ordered deported from the United States by an immigration judge in proceedings commenced before April 1, 1997 under section 242 of the Act.
  ☐ to have reentered the United States illegally and have had the prior order reinstated under section 241(a)(5) of the Act.

☒ At any time because you have been found inadmissible or excludable under section 212 of the Act, or deportable under section 241 or 237 of the Act, and ordered deported or removed from the United States, and you have been convicted of a crime designated as an aggravated felony.

After your removal has been effected you must request and obtain permission from the Attorney General to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or office of the Immigration and Naturalization Service. Refer to the above file number when requesting forms or information.

**WARNING: Title 8 United States Code, Section 1326 provides that it is a crime for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Attorney General's express consent. Any alien who violates this section of law is subject to prosecution for a felony. Depending on the circumstances of the removal, conviction could result in a sentence of imprisonment for a period of from 2 to 20 years and/or a fine of up to $250,000.**

_____
(Signature of officer serving warning)

DEO
(Title of Officer)

Allenwood, PA
(Location of INS office)

4/3/2000

Form I-294 (Rev. 6-1-97)N



**U.S. Department of Homeland Security**
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

# U.S. Immigration
# and Customs
# Enforcement

Ms. Lisa Smart
Consulate General of Jamaica
767 Third Avenue, Second Floor
New York, New York 10017-2993

Re:       Request for a Travel Document
         **Mr. Junior Nathaniel Ricketts**           **A27 024 434**

Dear Officer Smart:

Enclosed herewith is information relating to Mr. Ricketts, a native and citizen of Jamaica, for whom a travel document is respectfully requested.

Mr. Ricketts came into our custody on September 5, 2006. We previously effected his removal to Jamaica on April 3, 2000, and have reinstated the prior removal order of the Immigration Judge. We would greatly appreciate your issuing a travel document for him so that we may arrange for his return to his native country.

Please telephone our office at (585) 344-0830, extension 229, if you require any additional information from either Mr. Ricketts or this office.

Thank you for your kind courtesies in this regard.

Very truly yours,

William M. Cleary
Field Office Director
Detention and Removal Operations

Enclosures:

- ☐ Form I-217 in Triplicate and Consular Form
- ☐ Copy of Reinstatement of Prior Order
- ☐ Copy of Immigration Judge's and Board's Decisions
- ☐ Copy of Warrant of Removal and Previously Executed Warrant of Removal
- ☐ Photographs and Fingerprints
- ☐ Copies of Birth Certificate and Passport Pages



**C**ONSULATE-**G**ENERAL OF **J**AMAICA
**NEW YORK**

767 THIRD AVE.
New York, NY 10017

Tel: 212-935-9000
Fax: 212-935-7507

A27 024 434

Web: www.congenjamaica-ny.org

# PERSONAL DATA FOR IDENTIFICATION OF DETAINEES

**NAME OF APPLICANT**      Junior          Nathaniel          Ricketts

First Name          Middle Name(s)          Last Name

**DATE OF BIRTH**      10  12  1955          **PLACE OF BIRTH**  Kingston

(MM/DD/YY)                    (Parish/Country)

**MOTHER'S NAME**      Keturah                  Campbell

First Name          Middle Name(s)          Maiden Name

**PASSPORT NUMBER**      565227      **ISSUED IN** _____ **ON**  06  24  1983

(CITY)                    (MM/DD/YY)

**NAME OF SCHOOL(S) ATTENDED** _____

**RETURN ADDRESS**      27 Maiden Lane, Kingston, Jamaica, West Indies

**NAME AND ADDRESS OF TWO (2) REFERENCES IN JAMAICA:**

|  |  |
|---|---|
| Photograph | **(1) Name** _____ |
|  | **Address** _____ |
|  | _____ |
|  | **Telephone #** ( ) _____ |
|  | **(2) Name** _____ |
|  | **Address** _____ |
|  | _____ |
|  | **Telephone #** ( ) _____ |

**SIGNATURE** _____          **DATE** _____

| DATE PREPARED 08/25/2006 | INFORMATION FOR TRAVEL DOCUMENT OR PASSPORT | FILE A 27 024 434 |
|---|---|---|

**1. NAME**
Junior Nathaniel RICKETTS

**2. SEX**
MALE

**3. OTHER NAMES USED OR KNOWN BY**
PAUL MILTON MILES, JR. MOHAMMED RICKETTS

**4. CITIZENSHIP**
JAMAICA

**5. DATE OF BIRTH**
10/12/1955

**6. PLACE OF BIRTH**
KINGSTON, JAMAICA

**7. HEIGHT** 5ft 09in **WEIGHT** 159 lbs **EYES** BROWN **HAIR** BLACK **COMPLEXION** DARK **MARKS OR SCARS** SCAR ON BACK

**8. NEAREST LARGE CITY TO PLACE OF BIRTH**
N/A

**9. DISTANCE AND DIRECTION OF PLACE OF BIRTH FROM THIS LARGE CITY**
N/A

**10. IF CITIZENSHIP IS DIFFERENT FROM COUNTRY OF BIRTH, EXPLAIN. IF NATURALIZED IN ANY COUNTRY, SHOW DATE AND PLACE OF NATURALIZATION, CERTIFICATE NUMBER, AND STATE HOW CITIZENSHIP WAS ACQUIRED.**
N/A

**11. NAMES: LOCATIONS AND DATES (YEARS) OF ATTENDANCE OF FOREIGN SCHOOLS**

**12. NAMES, EXACT LOCATIONS AND DATES (YEARS) OF ATTENDANCE OF FOREIGN CHURCHES. INCLUDE DATE AND NATURE OF ANY RELIGIOUS CEREMONY WHICH MAY HAVE BEEN RECORDED.**

**13. LAST PERMANENT RESIDENCE IN COUNTRY OF CITIZENSHIP** (Show dates of residence)
27 MAIDEN LANE; KINGSTON, JAMAICA, WEST INDIES

**14. ADDRESS IN COUNTRY OF LAST FOREIGN RESIDENCE** (Show dates of residence, and immigration status there)
1610 ST. JOHN'S PLACE; APARTMENT #4-C; BROOKLYN, NEW YORK 11233

**15. PLACE OF ENTRY INTO UNITED STATES**
AN UNKNOWN PLACE

**DATE OF ENTRY INTO UNITED STATES**

**16. LIST DATE AND PLACE OF ISSUANCE AND NUMBER OF PASSPORT, BIRTH CERTIFICATE, BAPTISMAL CERTIFICATE OR DOCUMENT OF IDENTITY. SPECIFY DATES OF MILITARY SERVICE, COUNTRY AND UNIT, RANK, SERIAL NUMBER, AND PLACES OF INDUCTION AND DISCHARGE.**
PASSPORT 565227 ISSUED 6/24/83. VALID TO 6/23/1993. PREVIOUS PASSPORT #114877 ISSUED IN APRIL 1980. BIRTH CERTIFICATE AA4608

**17. IN POSSESSION OF TRAVEL DOCUMENT OR PASSPORT AT TIME OF ENTRY:** ☒ YES ☐ NO. DESCRIBE DOCUMENT (S). IF SUBJECT DID NOT HAVE TRAVEL DOCUMENT OR PASSPORT AT TIME OF ENTRY, OR DOES NOT HAVE SUCH A DOCUMENT NOW, INDICATE WHETHER EVER OBTAINED ONE: ☐ YES ☐ NO. STATE HOW, WHEN, AND WHERE IT WAS OBTAINED. WHAT KIND OF DOCUMENT IT WAS, AND WHAT BECAME OF IT.
PASSPORT

**18. FATHER'S NAME**
DAVID RICKETTS

**DATE OF BIRTH**

**PLACE OF BIRTH**
JAMAICA, WEST INDIES

**PRESENT ADDRESS**
DECEASED

**19. MOTHER'S MAIDEN NAME**
KETURAH CAMPBELL

**DATE OF BIRTH**

**PLACE OF BIRTH**
ST. ANN, JAMAICA

**PRESENT ADDRESS**
DECEASED

**20. NAME, RELATIONSHIP, AND ADDRESSES OF RELATIVES ABROAD**

**21. PREVIOUSLY** ☐ EXCLUDED ☐ DEPORTED ☒ REQUIRED TO DEPART FROM THE UNITED STATES
ON 04/03/2000 (Date) VIA NYC/JKF (Port) TO JAMAICA (Country)

**22. INDICATE WHETHER EVER ARRESTED, IN PRISON OR A PUBLIC INSTITUTION IN THE COUNTRY OF WHICH A NATIONAL, SUBJECT OR CITIZEN:** ☐ YES ☒ NO. IF SO, GIVE DATES AND PLACES
N/A

**23. NAME, NATIONALITY AND PRESENT ADDRESS OF SPOUSE, AND DATE AND PLACE OF MARRIAGE**
SUBJECT IS NOT MARRIED.

**24. NAME, AGES AND ADDRESSES OF ALL CHILDREN**
SUBJECT HAS NO CHILDREN.

**25. IF NONCANADIAN DEPORTABLE TO CANADA, GIVE DATE AND PORT OF ARRIVAL IN CANADA, AND NAME OF VESSEL**
N/A

| DATE PREPARED 08/25/2006 | INFORMATION FOR TRAVEL DOCUMENT OR PASSPORT | FILE A 27 024 434 |
|---|---|---|

**1. NAME**
Junior Nathaniel RICKETTS

**2. SEX**
MALE

**3. OTHER NAMES USED OR KNOWN BY**
PAUL MILTON MILES, JR. MOHAMMED RICKETTS

**4. CITIZENSHIP**
JAMAICA

**5. DATE OF BIRTH**
10/12/1955

**6. PLACE OF BIRTH**
KINGSTON, JAMAICA

| 7. HEIGHT | WEIGHT | EYES | HAIR | COMPLEXION | MARKS OR SCARS |
|---|---|---|---|---|---|
| 5ft 09in | 159 lbs | BROWN | BLACK | DARK | SCAR ON BACK |

**8. NEAREST LARGE CITY TO PLACE OF BIRTH**
N/A

**9. DISTANCE AND DIRECTION OF PLACE OF BIRTH FROM THIS LARGE CITY**
N/A

**10. IF CITIZENSHIP IS DIFFERENT FROM COUNTRY OF BIRTH, EXPLAIN. IF NATURALIZED IN ANY COUNTRY, SHOW DATE AND PLACE OF NATURALIZATION, CERTIFICATE NUMBER, AND STATE HOW CITIZENSHIP WAS ACQUIRED.**
N/A

**11. NAMES: LOCATIONS AND DATES (YEARS) OF ATTENDANCE OF FOREIGN SCHOOLS**

**12. NAMES, EXACT LOCATIONS AND DATES (YEARS) OF ATTENDANCE OF FOREIGN CHURCHES. INCLUDE DATE AND NATURE OF ANY RELIGIOUS CEREMONY WHICH MAY HAVE BEEN RECORDED.**

**13. LAST PERMANENT RESIDENCE IN COUNTRY OF CITIZENSHIP** *(Show dates of residence)*
27 MAIDEN LANE; KINGSTON, JAMAICA, WEST INDIES

**14. ADDRESS IN COUNTRY OF LAST FOREIGN RESIDENCE** *(Show dates of residence, and Immigration status there)*
1610 ST. JOHN'S PLACE; APARTMENT #4-C; BROOKLYN, NEW YORK 11233

**15. PLACE OF ENTRY INTO UNITED STATES**
AN UNKNOWN PLACE

**DATE OF ENTRY INTO UNITED STATES**

**16. LIST DATE AND PLACE OF ISSUANCE AND NUMBER OF PASSPORT, BIRTH CERTIFICATE, BAPTISMAL CERTIFICATE OR DOCUMENT OF IDENTITY. SPECIFY DATES OF MILITARY SERVICE, COUNTRY AND UNIT, RANK, SERIAL NUMBER, AND PLACES OF INDUCTION AND DISCHARGE.**
PASSPORT 565227 ISSUED 6/24/83. VALID TO 6/23/1993. PREVIOUS PASSPORT #114877 ISSUED IN APRIL 1980. BIRTH CERTIFICATE AA4608

**17. IN POSSESSION OF TRAVEL DOCUMENT OR PASSPORT AT TIME OF ENTRY:** ☒ YES ☐ NO. DESCRIBE DOCUMENT (S). IF SUBJECT DID NOT HAVE TRAVEL DOCUMENT OR PASSPORT AT TIME OF ENTRY, OR DOES NOT HAVE SUCH A DOCUMENT NOW, INDICATE WHETHER EVER OBTAINED ONE: ☐ YES ☐ NO. STATE HOW, WHEN, AND WHERE IT WAS OBTAINED: WHAT KIND OF DOCUMENT IT WAS, AND WHAT BECAME OF IT.
PASSPORT

**18. FATHER'S NAME**
DAVID RICKETTS

**DATE OF BIRTH**

**PLACE OF BIRTH**
JAMAICA, WEST INDIES

**PRESENT ADDRESS**
DECEASED

**19. MOTHER'S MAIDEN NAME**
KETURAH CAMPBELL

**DATE OF BIRTH**

**PLACE OF BIRTH**
ST. ANN, JAMAICA

**PRESENT ADDRESS**
DECEASED

**20. NAME, RELATIONSHIP, AND ADDRESSES OF RELATIVES ABROAD**

**21. PREVIOUSLY** ☐ EXCLUDED ☐ DEPORTED ☒ REQUIRED TO DEPART FROM THE UNITED STATES
ON 04/03/2000 *(Date)* VIA NYC/JKF *(Port)* TO JAMAICA *(Country)*

**22. INDICATE WHETHER EVER ARRESTED, IN PRISON OR A PUBLIC INSTITUTION IN THE COUNTRY OF WHICH A NATIONAL, SUBJECT OR CITIZEN:** ☐ YES ☒ NO. IF SO, GIVE DATES AND PLACES
N/A

**23. NAME, NATIONALITY AND PRESENT ADDRESS OF SPOUSE, AND DATE AND PLACE OF MARRIAGE**
SUBJECT IS NOT MARRIED.

**24. NAME, AGES AND ADDRESSES OF ALL CHILDREN**
SUBJECT HAS NO CHILDREN.

**25. IF NONCANADIAN DEPORTABLE TO CANADA, GIVE DATE AND PORT OF ARRIVAL IN CANADA, AND NAME OF VESSEL**
N/A

| DATE PREPARED 08/25/2006 | INFORMATION FOR TRAVEL DOCUMENT OR PASSPORT | FILE A | 27 024 434 |
|---|---|---|---|

**1. NAME**
Junior Nathaniel RICKETTS

**2. SEX**
MALE

**3. OTHER NAMES USED OR KNOWN BY**
PAUL MILTON MILES, JR. MOHAMMED RICKETTS

**4. CITIZENSHIP**
JAMAICA

**5. DATE OF BIRTH**
10/12/1955

**6. PLACE OF BIRTH**
KINGSTON, JAMAICA

| 7. HEIGHT | WEIGHT | EYES | HAIR | COMPLEXION | MARKS OR SCARS |
|---|---|---|---|---|---|
| 5ft 09in | 159 lbs | BROWN | BLACK | DARK | SCAR ON BACK |

**8. NEAREST LARGE CITY TO PLACE OF BIRTH**
N/A

**9. DISTANCE AND DIRECTION OF PLACE OF BIRTH FROM THIS LARGE CITY**
N/A

**10. IF CITIZENSHIP IS DIFFERENT FROM COUNTRY OF BIRTH, EXPLAIN. IF NATURALIZED IN ANY COUNTRY, SHOW DATE AND PLACE OF NATURALIZATION, CERTIFICATE NUMBER, AND STATE HOW CITIZENSHIP WAS ACQUIRED.**
N/A

**11. NAMES: LOCATIONS AND DATES (YEARS) OF ATTENDANCE OF FOREIGN SCHOOLS**

**12. NAMES, EXACT LOCATIONS AND DATES ( YEARS ) OF ATTENDANCE OF FOREIGN CHURCHES. INCLUDE DATE AND NATURE OF ANY RELIGIOUS CEREMONY WHICH MAY HAVE BEEN RECORDED.**

**13. LAST PERMANENT RESIDENCE IN COUNTRY OF CITIZENSHIP** (Show dates of residence)
27 MAIDEN LANE; KINGSTON, JAMAICA, WEST INDIES

**14. ADDRESS IN COUNTRY OF LAST FOREIGN RESIDENCE** (Show dates of residence, and Immigration status there)
1610 ST. JOHN'S PLACE; APARTMENT #4-C; BROOKLYN, NEW YORK 11233

**15. PLACE OF ENTRY INTO UNITED STATES**
AN UNKNOWN PLACE

**DATE OF ENTRY INTO UNITED STATES**

**16. LIST DATE AND PLACE OF ISSUANCE AND NUMBER OF PASSPORT, BIRTH CERTIFICATE, BAPTISMAL CERTIFICATE OR DOCUMENT OF IDENTITY. SPECIFY DATES OF MILITARY SERVICE, COUNTRY AND UNIT, RANK, SERIAL NUMBER, , AND PLACES OF INDUCTION AND DISCHARGE.**
PASSPORT 565227 ISSUED 6/24/83. VALID TO 6/23/1993. PREVIOUS PASSPORT #114877 ISSUED IN APRIL 1980. BIRTH CERTIFICATE AA4608

**17. IN POSSESSION OF TRAVEL DOCUMENT OR PASSPORT AT TIME OF ENTRY:** ☒ YES ☐ NO. DESCRIBE DOCUMENT (S). IF SUBJECT DID NOT HAVE TRAVEL DOCUMENT OR PASSPORT AT TIME OF ENTRY, OR DOES NOT HAVE SUCH A DOCUMENT NOW, INDICATE WHETHER EVER OBTAINED ONE: ☐ YES ☐ NO. STATE HOW, WHEN, AND WHERE IT WAS OBTAINED: WHAT KIND OF DOCUMENT IT WAS, AND WHAT BECAME OF IT.
PASSPORT

**18. FATHER'S NAME**
DAVID RICKETTS

**DATE OF BIRTH**

**PLACE OF BIRTH**
JAMAICA, WEST INDIES

**PRESENT ADDRESS**
DECEASED

**19. MOTHER'S MAIDEN NAME**
KETURAH CAMPBELL

**DATE OF BIRTH**

**PLACE OF BIRTH**
ST. ANN, JAMAICA

**PRESENT ADDRESS**
DECEASED

**20. NAME, RELATIONSHIP, AND ADDRESSES OF RELATIVES ABROAD**

**21. PREVIOUSLY** ☐ EXCLUDED ☐ DEPORTED ☒ REQUIRED TO DEPART FROM THE UNITED STATES

ON  04/03/2000  VIA  NYC/JKF  TO  JAMAICA
     (Date)              (Port)                    (Country)

**22. INDICATE WHETHER EVER ARRESTED, IN PRISON OR A PUBLIC INSTITUTION IN THE COUNTRY OF WHICH A NATIONAL, SUBJECT OR CITIZEN:** ☐ YES ☒ NO. IF SO, GIVE DATES AND PLACES
N/A

**23. NAME, NATIONALITY AND PRESENT ADDRESS OF SPOUSE, AND**
SUBJECT IS NOT MARRIED.

**DATE AND PLACE OF MARRIAGE**

**24. NAME, AGES AND ADDRESSES OF ALL CHILDREN**
SUBJECT HAS NO CHILDREN.

**25. IF NONCANADIAN DEPORTABLE TO CANADA, GIVE DATE AND PORT OF ARRIVAL IN CANADA, AND NAME OF VESSEL**
N/A




**U.S. Department of Justice**
Immigration and Naturalization Se

**Notice to Appe**

In removal proceedings under section 240 of the Immigration and Nationality Act

File No: A27 024 434

In the Matter of:

Respondent:  Junior Nathaniel        RICKETTS          AKA: Junior Mohammed RICKETTS; Paul Milton MILES
 INMATE# 32256-054  PRD 4/25/99
FCI ALLENWOOD, P.O. BOX 1500
WHITE DEER                                                                        PA        17887        (570) 547-7950
 (Number, street, city, state and ZIP code)                                                    (Area code and phone n

☐ 1. You are an arriving alien.
☐ 2. You are an alien present in the United States who has not been admitted or paroled.
☒ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

COPY

SEE CONTINUATION PAGE

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

SEE CONTINUATION PAGE

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecut

☐ Section 235(b)(1) order was vacated pursuant to:   ☐ 8 CFR 208.30(f)(2)   ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: IMMIGRATION
COURT, 3434 CONCORD ROAD, YORK, PA 17402
 (Complete Address of Immigration Court, Including Room Number, if any)
on _____TO BE SET_____ at ____TO BE SET____ to show why you should not be removed from the United States based o
              (Date)                        (Time)
charge(s) set forth above.

                                                                    Acting    IHP DIRECTOR
                                                                            (Signature and Title of Issuing Officer)

Date: **MAR 2 6 1999**                                              ALLENWOOD, PA
                                                                          (City and State)

**See reverse for important information**

| Alien's Name Junior Nathaniel RICKETTS AKA: Junior Mohammed RICKETTS; Paul Milton MILES | File Number A27 024 434 | Date |
|---|---|---|
| | | MAR 2 6 1996 |

THE SERVICE ALLEGES THAT YOU:

You are not a Citizen or Native of the United States;

You are a Native of Jamaica and a Citizen of Jamaica;

You entered the United States at or near Washington, DC on December 27, 1982 as a Nonimmigrant Visitor with authorization to remain in the United States for a temporary period not to exceed Six months;

You remained in the United States beyond June 27, 1983 without authorization from the Immigration and Naturalization Service;

You were, on January 9, 1995, convicted in the United States District Court, Southern District of New York for the offenses of embezzlement of funds from a federally funded local Government Agency, in violation of Title 18, United States Code, Section 666(a)(1)(A), Illegal entry and harboring of aliens in the United States, in violation of Title 8, United States Code, Section 1324(a)(1)(D), Fruad and misuse of an alien registration card, in violation of Title 18, United States Code, Section 1546, and illicit transportation of a minor with intent to engage in sexual activity, in violation of Title 18, United States Code, Section 2423.

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:

Section 237(a)(1)(A) of the Immigration and Nationality Act (Act), as amended, in that at the time of entry or adjustment of status, you were within one or more of the classes of aliens inadmissible by the law existing at such time, to wit: alien immigrants who are not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by the Act, or who are not in possession of a valid unexpired passport, or other suitable travel document, or identity and nationality document if such document is required by regulations issued by the Attorney General under section 212(a)(7)(A)(i)(I).

Section 237(a)(1)(B) of the of the Immigration and Nationality Act (Act), as amended, in that after admission as a nonimmigrant under section 101(a)(15) of the Act you have remained in the United States for a time longer than permitted.

Section 237(a)(2)(A)(iii) of the of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43) of the Act.

Section 237(a)(3)(D) of the Immigration and Nationality Act (Act), as amended, in that you are an alien who has falsely represented yourself to be a citizen of the United States for any purpose or benefit under this Act (including Section 274A) or a Federal or State law

| Signature | Title Act'g IHP DIRECTOR |
|---|---|

of _____ Pages

*U.S. GPO: 1992-342-483/72348

Form I-831 Continuation Page (Rev. 6/12/92)

U.S. Department of Justice

Immigration and Naturalization Service

# Additional Charges of Inadmissibility/Deportability

In: ☒ Removal proceedings under section 240 of the Immigration and Nationality Act

☐ Deportation proceedings commenced prior to April 1, 1997 under former section 242 of the Immigration and Nationality Act

**In the Matter of:**

Alien/Respondent: <u>RICKETTS, Junior</u>

File No.: <u>A27 024 434</u>  Address:  <u>Snyder County Prison, 600 Old Colony Road, Selinsgrove, PA 17870</u>

There is lodged against you the additional charge that you are subject to being taken into custody and deported or removed from the United States pursuant to the following provision(s) of law:

In support of the the additional charges above there is submitted the following factual allegation(s) ☒ in addition to ☐ in lieu of the allegations set forth in the original charging document

6.      You have in the past and are currently falsely claiming to be a United States citizen in order to avoid deportation.

Dated:   6/8/99

_____
(Signature of Service Counsel)

U.S. Department of Justice
Immigration and Naturalization Service

# Notice of Intent/Decision to Reinstate Prior Order

File No. A 27 024 434

Date: *April 22, 2005*

Name: **RICKETTS, Junior Nathaniel**     A/K/A     RICKETTS, Junior M.

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 241.8, you are hereby notified that the Attorney General intends to reinstate the order of **REMOVAL** entered against you. This intent is based on
(Deportation / exclusion / removal)
the following determinations:

1. You are an alien subject to a prior order of **REMOVAL** entered on **November 3, 1999** at
   (Date)
   **York, Pennsylvania.**
   (Location)

2. You have been identified as an alien who:

   ☒ was removed on **April 3, 2000** pursuant to an order of **REMOVAL**.
   (Date)

   ☐ departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
   (Date)
   after the date on which such order took effect. (i.e., who self-deported).

3. You illegally reentered the United States on or about *UNKNOWN* at or near *UNKNOWN* .
   (Date)                    (Location)

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and is therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* __English__ *language.*

Constantin Belyayev
(Printed or typed name of official)

(Signature of officer)

Special Agent
(Title of officer)

---

## Acknowledgement and Response

I ☑ do ☐ do not wish to make a statement contesting this determination. *Refused*

*4/20/00*     *REFUSED FINGERPRINT*     (Signature of alien)
(Date)

---

## Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made and submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

*28 APR 05*     **Albany, New York**
(Date)          (Location)          (Signature of authorized deciding INS official)

**John C. McQuade**          **Resident Agent in Charge**
(Printed or typed name of official)          (Title)

**Exhibit C**

Form I-871 (Rev. 6-5-97)

Respectfully,

Clerk

MMW/CAD/cmh

_____ORDER_____

The foregoing motion to dismiss is granted.  The time period for filing a petition for
review is an emphatic time prescription that is not subject to equitable tolling, and our
duty to dismiss untimely claims is mandatory where the Attorney General objects on the
basis of untimeliness.  See Stone v. Immigration & Naturalization Serv., 514 U.S. 386,
405 (1995), as modified by Eberhart v. United States, 126 S. Ct. 403, 406-07  (U.S. 2005)
(per curiam).  The motion for stay of removal is denied as moot.

By the Court,

/s/ Theodore A. McKee
Circuit Judge

Dated:  April 16, 2007
CMH/cc: JMR, EJD

**Exhibit D**

2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

Junior M. Ricketts,
A# 27-024-434,

                Petitioner,

v.

Charles Mule, Facilities Director,
Buffalo Federal Detention Facility;
David Venturella, Director,
Post-Order Detention Unit,
Bureau of Immigration and Customs
Enforcement;
Peter J. Smith, District Director,
U.S. Citizenship and Immigration
Services;
Alberto Gonzales,
Attorney General of the United States,

                Respondents.         07-CV-0138 Sr

---

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2007  I electronically filed the foregoing Answer and Return with the Clerk of the District Court using its CM/ECF system.  I further certify that on May 8, 2007, I have mailed the foregoing Answer and Return  by the United States Postal Service, to the following non-CM/ECF participant at his last known address:

        Junior M. Ricketts
        A27-024-434
        Buffalo Federal Detention Facility
        4250 Federal Drive
        Batavia, NY 14020

                   s/ Jody L. Wienke
                   Jody L. Wienke