IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

Junior M. Ricketts,
A# 27-024-434,

       Petitioner,

v.

Charles Mule, et al.,

       Respondents.    07-CV-0138 Sr

---

**MEMORANDUM OF LAW**

**I. PRELIMINARY STATEMENT**

In the petition for a writ of habeas corpus filed under 28 U.S.C. § 2241, petitioner Junior M. Ricketts (hereinafter "Ricketts" or "petitioner"), challenges his continued detention while the Department of Homeland Security, Immigration and Customs Enforcement ("DHS, ICE"), secures a travel document for petitioner's return to Jamaica. Ricketts also asserts that he is challenging the underlying order of removal as he asserts a claim to United States citizenship. As his order of removal was entered within the jurisdiction of the Third Circuit Court of Appeals, that court has exclusive jurisdiction over any claim regarding the underlying order of removal. The Third Circuit Court of Appeals has dismissed that action under its Docket No. 06-4612.

## II. FACTS

The facts and procedural history are fully set forth in the Declaration of Robert Faber, which is filed herewith as respondent's Return to the Petition (Respondent's Answer and Return, Exhibit 1) and incorporated herein by reference.

## III. DISCUSSION

**A. This Court Lacks Jurisdiction to Review Petitioner's Underlying Claim to United States Citizenship**

To the extent that Ricketts asserts that his continued custody is improper based upon his allegation that he is a United States citizen, this Court lacks jurisdiction to review the claim as "review of nationality claims in the context of removal orders must occur, in the first instance, in the court of appeals." Fairweather v. Ashcroft, No. 03 CV 0210 NG, 2003 WL 21196839, at *1 (E.D.N.Y. May 14, 2003); see Langhorne v. Ashcroft, 377 F.3d 175, 177 (2d Cir. 2004); 8 U.S.C. § 1252(b)(5). The Court of Appeals for the Third Circuit, under its docket number 06-4612, has dismissed the action on April 16, 2007. Faber Declaration, ¶ 10 and Exhibit C attached thereto.

Regarding his custody claim otherwise, Congress enacted the Real ID Act in 2005 to restrict district court jurisdiction over immigration appeals, with most petitions now being heard by the United States Courts of Appeals. While the Real ID Act deprived district courts of jurisdiction over immigration habeas petitions generally, that act did not eliminate district court jurisdiction over an alien's challenge to his immigration detention. See Hernandez v. Gonzales, 424 F.3d 42 (1st Cir. 2005).

**B. The Petition Fails to State a Claim Upon Which Relief Can Be Granted Because Petitioner's Continued Detention is Lawful Pursuant to INA § 241(a), 8 U.S.C. § 1231(a).**

Even assuming that this Court finds it has jurisdiction to review the Petition, Ricketts's detention under INA § 241(a), 8 U.S.C. § 1231(a), is constitutional because he has not been detained for an unreasonable time. Ricketts was taken into immigration detention on or about September 5, 2006. See Faber Decl., ¶ 8. As of October 30, 2006, petitioner had filed a petition for review with the United States Court of Appeals for the Third Circuit. Id. at ¶ 10. That matter was not dismissed until April 16, 2007. Id. at ¶ 11. Thus, in the meantime, the agency did not attempt to secure a travel document for Ricketts' return to Jamaica and will now undertake such efforts.

1.  **Summary of the Law Governing Repatriation Likelihood and Custody Review.**

The authority to detain aliens after the issuance of a final removal order is INA § 241(a), 8 U.S.C. § 1231(a). Under this provision, the Attorney General is afforded a ninety-day period to accomplish the alien's removal from the United States following the entry of a final order of deportation or removal.[1] See INA § 241(a)(1)(A)-(B), 8 U.S.C.§ 1231(a)(1)(A)-(B). During the removal period, Congress has mandated detention of the alien ordered removed. See INA § 241(a)(2), 8 U.S.C. § 1231(a)(2) ("Under no circumstances during the removal period shall the Attorney General release an alien who has been found . . . deportable under section 1227(a)(2) [relating to criminal grounds of removability]. . . of this title."). Further, for certain aliens such as those who have been convicted of serious criminal offenses, the Attorney General may continue to detain an alien even after the expiration of the ninety-day removal period: "An alien ordered removed who is . . . removable under section

---

[1] 8 U.S.C. § 1231(a)(1)(B) provides:

> The removal period begins on the latest of the following:
> (i) The date the order of removal becomes administratively final;
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

237(a)(1)(C), 237(a)(2), or 237(a)(4) or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." INA § 241(a)(6), 8 U.S.C. § 1231(a)(6).

The authority to detain aliens was modified by the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001). There, the Court held that INA § 241(a), 8 U.S.C. § 1231(a), authorized immigration detention, after entry of an administratively final order of deportation or removal, for a period reasonably necessary to accomplish the alien's removal from the United States. Zadvydas, 533 U.S. at 699-700. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal. Id. at 701.

However, the Court did not require that every alien who has been in detention for more than six months be released. To the contrary, the Court held:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence

5

> sufficient to rebut that showing. And for detention to
> remain reasonable, as the period of prior post-removal
> confinement grows, what counts as the "reasonably
> foreseeable future" conversely would have to shrink.
> *This 6-month presumption, of course, does not mean that
> every alien not removed must be released after six
> months. To the contrary, an alien may be held in
> confinement until it has been determined that there is
> no significant likelihood of removal in the reasonably
> foreseeable future.*

Id. (emphasis added). It is clear that the Supreme Court places the initial burden of proof on the alien seeking release to demonstrate good reason to believe that there is no significant likelihood of his or her repatriation in the reasonably foreseeable future. If the alien fails to meet his or her burden, or if the agency rebuts the alien's demonstration, then continued detention is permissible.

To comply with the Supreme Court's ruling, the Attorney General promulgated regulations governing custody review of aliens who have been in detention for more than six months after the issuance of a final removal order. See "Continued Detention of Aliens Subject to Final Orders of Removal," 66 Fed. Reg. 56967 (Nov. 14, 2001) (now codified at 8 C.F.R. Pts. 3 and 241). Under the new regulations, a detainee who has been in post-removal order custody for more than six months may request the agency for release on the asserted ground that there is no significant

likelihood of repatriation in the reasonably foreseeable future. The request must include:

> (d) Showing by the alien.
> (1) Written request. An eligible alien may submit a written request for release to the [Headquarters Post-Order Detention Unit ("HQPDU")] asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien. The alien may submit whatever documentation to the HQPDU he or she wishes in support of the assertion that there is no significant likelihood of removal in the reasonably foreseeable future.
>
> (2) Compliance and cooperation with removal efforts. The alien shall include with the written request information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents.

8 C.F.R. § 241.13(d).

In reviewing the request for release, the agency is required to consider the history of the alien's efforts to comply with the order of removal. The agency also must consider the history of the efforts by the agency to repatriate persons to the country in question, the reasonably foreseeable results of those efforts, and the receiving country's willingness to accept repatriation. 8 C.F.R. § 241.13(f). In addition, the agency may also seek an opinion from the United States Department of State. Id.

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of repatriation in the reasonably foreseeable future, and that other evidence does not rebut that demonstration, then it will order the alien released. 8 C.F.R. § 241.13(g)(1).[2] The Supreme Court has clearly stated that it is the detainee's burden to demonstrate eligibility for release. Zadvydas, 533 U.S. at 701. However, when releasing an alien, the agency may impose certain conditions on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. See 8 C.F.R. §§ 241.5(b), 241.13(h)(1). See also Zadvydas, 533 U.S. at 695 ("we nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

On the other hand, if the agency finds that the alien has not met the aforementioned burden and therefore does not merit release, then it may issue a denial decision. 8 C.F.R.

---

[2] In special circumstances not relevant here, the agency may continue the detention of aliens otherwise eligible for release under 8 C.F.R. § 241.13(g)(1) if (1) the alien has a highly contagious disease that is a threat to public safety, (2) release would lead to serious adverse foreign policy consequences, (3) release would lead to security or terrorism concerns, or (4) the alien is deemed "especially dangerous." 8 C.F.R. § 241.14.

§ 241.13(g)(2). One potential ground for denying the request for release is any lack of cooperation by the alien with the removal process. 8 C.F.R. § 241.13(e)(2) provides:

> (2) Lack of compliance, failure to cooperate. The HQPDU shall first determine if the alien has failed to make reasonable efforts to comply with the removal order, has failed to cooperate fully in effecting removal, or has obstructed or hampered the removal process. If so, the HQPDU shall so advise the alien in writing, with a copy to counsel of record by regular mail. The HQPDU shall advise the alien of the efforts he or she needs to make in order to assist in securing travel documents for return to his or her country of origin or a third country, as well as the consequences of failure to make such efforts or to cooperate, including the provisions of section 243(a) of the Act. The Service shall not be obligated to conduct a further consideration of the alien's request for release until the alien has responded to the HQPDU and has established his or her compliance with the statutory requirements.

Finally, the INA imposes an affirmative obligation on an alien "to make timely application in good faith for travel and other documents necessary to [his] departure," and imposes criminal penalties for a willful failure to do so. See INA § 243(a), 8 U.S.C. § 1253(a). Petitioner therefore is not excused from his obligation to make efforts to secure travel documents simply because he wishes to remain in the United States. Nor can it be presumed that such efforts would be futile. Zadvydas, 533 U.S. at 701. Indeed, repatriation is not the sole responsibility of the agency, but a shared

9

responsibility between the alien and the United States government.

### 2. Application of law to the instant case

Ricketts has failed to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future. Ricketts has not alleged any facts to indicate that Jamaica will not issue the necessary travel documentation for his repatriation. In fact, unlike the two aliens in Zadvydas, whose acceptance was refused by the countries to which the agency was attempting to deport them, Ricketts has not received any notification from Jamaica that he will not be repatriated. Ricketts was only in detention for a short time before he filed the petition for review with the Court of Appeals and that matter was only dismissed on April 16, 2007. (Faber Declaration, at ¶ 11). Thus, respondents have had a limited time to make a good faith effort but will now continue efforts to effectuate petitioner's deportation. (Faber Declaration, at ¶ 12). Since Ricketts has failed to meet his burden of proof of demonstrating that there is good reason to believe there is no significant likelihood of his repatriation in the reasonably foreseeable future, as described by the Supreme Court in Zadvydas, petitioner's continued detention is lawful.

## IV. CONCLUSION

Therefore it is respectfully requested that this petition be denied for failure to state a claim upon which relief can be granted.

**DATED:** Buffalo, New York, May 8, 2007.

        Respectfully submitted,

        TERRANCE P. FLYNN
        United States Attorney


BY:   <u>s/ Mary E. Fleming</u>
      MARY E. FLEMING
      Assistant United States Attorney
      United States Attorney's Office
      Western District of New York
      138 Delaware Avenue
      Buffalo, New York 14202
      (716) 843-5700 ext. 867
      [Mary.Pat.Fleming@USDOJ.gov]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

Junior M. Ricketts,
A# 27-024-434,

                    Petitioner,

v.

Charles Mule, Facilities Director,
Buffalo Federal Detention Facility;
David Venturella, Director,
Post-Order Detention Unit,
Bureau of Immigration and Customs
Enforcement;
Peter J. Smith, District Director,
U.S. Citizenship and Immigration
Services;
Alberto Gonzales,
Attorney General of the United States,

                    Respondents.          07-CV-0138 Sr

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2007 I electronically filed the foregoing Memorandum of Law with the Clerk of the District Court using its CM/ECF system. I further certify that on May 8, 2007, I have mailed the foregoing Memorandum of Law by the United States Postal Service, to the following non-CM/ECF participant at his last known address:

    Junior M. Ricketts
    A27-024-434
    Buffalo Federal Detention Facility
    4250 Federal Drive
    Batavia, NY 14020

                                      s/ Jody L. Wienke
                                  Jody L. Wienke