IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

Junior M. Ricketts,
A27-024-434,

                    Petitioner,

v.

Charles Mule, Facilities Director,
Buffalo Federal Detention Facility;       07-CV-0138-Sr
David Venturella, Director,
Post-Order Detention Unit,
Bureau of Immigration and Customs
Enforcement; Peter J. Smith,
District Director, U.S. Citizenship
and Immigration Services; Alberto
Gonzales, Attorney General of the
United States,

                    Respondents.

---

**MEMORANDUM OF LAW IN OPPOSITION TO
PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

**I.   PRELIMINARY STATEMENT**

This is a habeas proceeding brought pursuant to 28 U.S.C.
§ 2241 by Junior Ricketts (hereinafter "Ricketts" or "petitioner"),
an alien subject to a final order of removal from the United
States, who challenges his detention in custody pending his
removal.  See Docket No. 1.  In his petition, Ricketts challenges
the constitutionality his final order of removal and seeks release
from continued detention while the Department of Homeland Security,
Immigration and Customs Enforcement (collectively hereinafter

"DHS"), secures a travel document for his removal from the United States.  Inasmuch as the Real ID Act of 2005[1] divested the district courts of jurisdiction over challenges to the validity of removal orders, the only matter before this Court is Ricketts's challenge to his continued detention.  On May 8, 2007, respondents filed an Answer and Return along with a Memorandum of Law in Opposition to the Petition. (Docket Nos. 5 and 6.)  On December 21, 2007, Ricketts filed a Motion for Summary Judgment on his claim for release from detention. (Docket No. 9.)

For their opposition to the petitioner's Motion for Summary Judgment, respondents submit this memorandum of law, along with the Affidavit of Deportation Officer Donald J. Vaccaro, Jr., sworn to on January 24, 2008, ("Vaccaro Affidavit") and its attached Exhibit A ("Exhibit A").  In addition, respondents submit pursuant to the local rules of civil procedure, a Statement of Material Facts Not in Dispute.  Respondents also rely upon their Answer and Return, including the Declaration of Deportation Officer Robert Faber, dated May 7, 2007, and the Exhibits A-D attached thereto. (Docket No. 5.)

---

[1]    Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Pub. L. No. 109-13, 119 Stat. 231, Div. B (May 11, 2005).

## II.  FACTS[2]

### A.  Background and Order of Removal.

The petitioner is a native and citizen of Jamaica who was ordered removed pursuant to INA §§ 237(a)(1)(A),(1)(B), (2)(A)(iii), and (3)(D) (8 U.S.C. §§ 1227(a)(1)(A),(1)(B), (2)(A)(iii), and (3)(D)), for being inadmissible at the time of entry, for his presence in the United States in violation of law, for having been convicted of an aggravated felony, and for making a false claim to United States citizenship. See Vaccaro Affidavit ¶ 5.  The Board of Immigration Appeals dismissed Ricketts's appeal on March 8, 2000.  See Vaccaro Affidavit ¶ 6.

On or about April 3, 2000, Ricketts was removed from the United States pursuant to the Order of Removal.  See Vaccaro Affidavit ¶ 7.  At some point, Ricketts re-entered the United States.  See Vaccaro Affidavit ¶ 8.  On or about April 22, 2005, Ricketts was issued a Notice of Intent/Decision to Reinstate the prior order of removal.  See Vaccaro Affidavit ¶ 9.

---

[2]    A full statement of facts relevant to the petition is set forth in Respondents' Answer and Return and prior memorandum of law (Docket Nos. 5 and 6), as supplemented by the Vaccaro Affidavit sworn to on January 24, 2008, which is being filed herewith.  Petitioner Ricketts has not disputed any of the facts set forth in the respondents' submissions.

Ricketts was taken into immigration detention on or about September 5, 2006, upon his release from state custody where he had been serving a sentence pursuant to a conviction for forgery and grand larceny. See Vaccaro Affidavit ¶ 10.

On or about October 30, 2006, Ricketts filed a petition for review with the United States Court of Appeals for the Third Circuit; on April 16, 2007, the Court of Appeals dismissed that petition for review. See Vaccaro Affidavit ¶¶ 12, 14. On January 8, 2008, Ricketts filed a petition for rehearing with the Third Circuit Court. See Exhibit A, p. 48.

**B. Reviews of Ricketts's Custody Status and the Pending Request for a Travel Document from Jamaica.**

Since September 2006 , DHS has made efforts to obtain a travel document for Ricketts's return to Jamaica. See Vaccaro Affidavit ¶¶ 11-16, 18-19, 21-25. In April 2007, a representative from the Jamaican Consulate informed DHS that a travel document would be issued for Ricketts. Vaccaro Affidavit ¶ 15. Thereafter, DHS scheduled to remove Ricketts on April 23, 2007. Id. Ricketts claimed to a representative of the Jamaican consulate that he is a citizen of the United States. See Exhibit A, p. 6. On April 27, 2007, a representative from the Jamaican Consulate informed DHS

that the Consulate required additional time to investigate Ricketts's nationality before issuing a travel document.  See Vaccaro Affidavit ¶ 16.

On January 3, 2008, DHS served Ricketts with a formal Warning for Failure to Depart, along with an instruction sheet listing actions that Ricketts is required to complete within 30 days to assist in obtaining a travel document for Ricketts's removal from the United States.  See Vaccaro Affidavit ¶ 19.  On January 9, 2008, DHS re-sent the presentation packet to the Consulate General of Jamaica in New York, New York.  See Vaccaro Affidavit ¶ 20.

While the travel document request to Jamaica has been pending, a review of Ricketts's custody status was completed by DHS in June 2007; the review concluded that Ricketts should continue to be held in DHS custody. See Vaccaro Affidavit ¶ 17 and Exhibit A, p. 2. The DHS decision to continue to detain Ricketts is based, inter alia, upon the agency's expectation that Ricketts will be removed from the United States in the reasonably foreseeable future, and upon a determination that based upon Ricketts's criminal history, his uncooperativeness in assisting with obtaining a travel document, and the fact that he re-entered the United States with a fraudulently obtained passport, that Ricketts is a flight risk and a threat to the community. Id.

## III. ARGUMENT

## RICKETTS'S CONTINUED DETENTION IS LAWFUL

**A.    Summary of the Law Governing Repatriation Likelihood and Custody Review.**

The authority to detain aliens after the issuance of a final removal order is INA § 241(a), 8 U.S.C. § 1231(a). Under this provision, the Attorney General is afforded a ninety-day (90) period to accomplish an alien's removal from the United States following the entry of a final order of deportation or removal.[3] See INA § 241(a)(1)(A)-(B), 8 U.S.C. § 1231(a)(1)(A)-(B). During the removal period, detention of the alien ordered removed is permitted. See INA § 241(a)(2), 8 U.S.C. § 1231(a)(2). Further, for certain aliens, such as those who have been convicted of criminal offenses, the Attorney General may continue to detain an alien even after the expiration of the ninety-day (90) removal period: "An alien ordered removed who is . . . removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) or who has been

---

[3]  8 U.S.C. § 1231(a)(1)(B) provides:

> The removal period begins on the latest of the following:
> (i)  The date the order of removal becomes administratively final;
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  INA § 241(a)(6), 8 U.S.C. § 1231(a)(6).

The authority to detain aliens was modified by the United States Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001). There, the Court held that INA § 241(a), 8 U.S.C. § 1231(a), authorized immigration detention, after entry of an administratively final order of deportation or removal, for a period reasonably necessary to accomplish the alien's removal from the United States.  Zadvydas, 533 U.S. at 699-700.  The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal.  Id. at 701.

However, the Court did not require that every alien who has been in detention for more than six months be released.  To the contrary, the Court held:

> After this 6-month period, once the alien
> provides good reason to believe that there is
> no significant likelihood of removal in the
> reasonably foreseeable future, the Government
> must respond with evidence sufficient to rebut
> that showing.  And for detention to remain
> reasonable, as the period of prior
> post-removal confinement grows, what counts as

the "reasonably foreseeable future" conversely would have to shrink. **This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.**

Id. (Emphasis added).

In Zadvydas, the Supreme Court placed the burden of proof on the alien seeking release to demonstrate good reason to believe that there is no significant likelihood of his repatriation in the reasonably foreseeable future. Id. If the alien fails to meet his burden, or if the agency rebuts the alien's demonstration, then continued detention is permissible.

To comply with the Supreme Court's ruling, the Attorney General promulgated regulations providing custody review of aliens who have been in detention for more than six months after the issuance of a final order of removal. See "Continued Detention of Aliens Subject to Final Orders of Removal," 66 Fed. Reg. 56967 (Nov. 14, 2001) (now codified at 8 C.F.R. Pts. 3 and 241). Under these regulations, a detainee who has been in post-removal order custody for more than six months may request the agency for release on the asserted ground that there is no significant likelihood of

repatriation in the reasonably foreseeable future.  The request

must include:

>  (d) Showing by the alien.

>  (1) Written request. An eligible alien may submit a written request for release to the [Headquarters Post-Order Detention Unit ("HQPDU")] asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien.  The alien may submit whatever documentation to the HQPDU he or she wishes in support of the assertion that there is no significant likelihood of removal in the reasonably foreseeable future.

>  (2) Compliance and cooperation with removal efforts. The alien shall include with the written request information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents.

8 C.F.R. § 241.13(d).


In reviewing the request for release, the agency is required

to consider the history of the alien's efforts to comply with the

order of removal.  The agency also must consider the history of the

efforts by the agency to repatriate persons to the country in

question, the reasonably foreseeable results of those efforts, and

the receiving country's willingness to accept repatriation.  In

addition, the agency may also seek an opinion from the United
States Department of State. 8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of
demonstrating good reason to believe there is no significant
likelihood of repatriation in the reasonably foreseeable future,
and that other evidence does not rebut that demonstration, then it
will order the alien released.  8 C.F.R. § 241.13(g)(1).[4]  The
Supreme Court has clearly stated that it is the detainee's burden
to demonstrate eligibility for release. <u>Zadvydas</u>, 533 U.S. at 701.
<u>See</u> <u>also</u> <u>Khan v. Fasano</u>, 194 F.Supp.2d 1134, 1136 (S.D. Cal. 2001)
("The burden is on the alien to show that there is no reasonable
**likelihood** of repatriation.") (emphasis in original) (citing
<u>Zadvydas</u>, 533 U.S. at 701).  However, when releasing an alien, the
agency may impose certain conditions on the alien, such as
requiring a bond, attendance in a rehabilitative program, or
submission to a medical or psychiatric examination.  <u>See</u> 8 C.F.R.
§§ 241.5(b), 241.13(h)(1).  <u>See</u> <u>also</u> <u>Zadvydas</u>, 533 U.S. at 695 ("we
nowhere deny the right of Congress to remove aliens, to subject
them to supervision with conditions when released from detention,

_____

[4]In special circumstances not relevant here, the agency may
continue the detention of aliens otherwise eligible for release
under 8 C.F.R. § 241.13(g)(1) if (1) the alien has a highly
contagious disease that is a threat to public safety, (2) release
would lead to serious adverse foreign policy consequences, (3)
release would lead to security or terrorism concerns, or (4) the
alien is deemed "especially dangerous."  8 C.F.R. § 241.14.

-10-

or to incarcerate them where appropriate for violations of those conditions.").

## B. Ricketts's Motion for Summary Judgment Should Be Denied as He Fails to State a Claim Upon Which Relief Can Be Granted.

In the instant case, Ricketts's immigration order of removal became final on April 28, 2005, upon reinstatement of the prior order of removal, inasmuch as the reinstated order was not reviewable. See 8 U.S.C. § 1231(a)(3); Exhibit A. p. 15. The ninety-day removal period commenced on September 5, 2006, when Ricketts was received into DHS custody. See 8 U.S.C. § 1231(a)(1)(B)(iii). Ricketts was subject to mandatory detention for the ninety-day removal period pursuant to INA § 241(a), 8 U.S.C. § 1231(a), as an alien subject to a final order of removal. Detention beyond the removal period is authorized by INA § 241(a)(6), 8 U.S.C. § 1231(a)(6). DHS determined that based upon his criminal record Ricketts is a threat to the community and a flight risk. DHS determined to continue Ricketts in custody beyond the removal period because, based upon the facts of his case, there was and is an expectation that Ricketts will be removed in the foreseeable future. See Exhibit A, p. 2; see also 8 C.F.R. § 241.4.

Contrary to petitioner Ricketts's assertions, his continued detention is in accordance with the requirements of the Supreme Court's decision in Zadvydas, 533 U.S. 678. In Zadvydas the Court held that 8 U.S.C. § 1231(a) authorizes detention for a period reasonably necessary to accomplish the alien's removal, and that an alien's detention is presumptively reasonable for a period of six months. Zadvydas, 533 U.S. at 699-701. Most significantly, under Zadvydas, an alien may be held in detention until there is good reason to believe that there is no significant likelihood of his repatriation in the reasonably foreseeable future. Id. Notwithstanding Ricketts's arguments which misapprehend the Zadvydas decision, just because an alien has been detained for six months, he is not entitled to release. In the Zadvydas case, the Supreme Court was presented with two aliens whose detention was found to be indefinite because the detention was "not limited, but potentially permanent." Zadvydas, 533 U.S. at 691. In Zadvydas, the Government had failed to secure the transfer of either of two aliens subject to final orders of removal, and could offer no promise of future success; each of three nations to which one of the aliens in Zadvydas had ties had refused his admission on the ground that he was not a citizen; the other alien petitioner was likewise not removable as his native country of Cambodia had no repatriation treaty with the United States. Id. While Zadvydas

created a "six-month presumption" of the validity of detention under INA § 241, after which time an alien could attack the reasonableness of his continued detention, the decision created no specific limits on detention. Rather, the Court ruled that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701. The basis of the Court's conclusion that the alien petitioners in Zadvydas were due release was the fact that the detention of both of the aliens in that case was found to be indefinite.

Ricketts's case is distinguishable from Zadvydas because his detention is not indefinite. Contrary to Ricketts's allegations that the Jamaican government will not issue a travel document, Jamaica has provided no indication to DHS that it will not issue a travel document for Ricketts. The request for a travel document remains pending with the Consulate General of Jamaica. Pursuant to the Zadvydas decision and the regulations enacted after Zadvydas was decided, it was and is Ricketts's burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. Ricketts has not met this burden. Ricketts's petition and summary judgment motion set forth no factual basis for

a conclusion that there is no significant likelihood that he can be repatriated to Jamaica in the reasonably foreseeable future.

To the contrary, the DHS record documents provided in opposition to the instant motion, show that (a) DHS has been actively seeking to obtain the travel document required for Ricketts's removal, (b) the Consulate General of Jamaica is conducting a review and investigation for issuance of the travel document, (3) the government of Jamaica regularly issues documents for the repatriation of its nationals and did issue a travel document for Ricketts's removal in 2000, (4) Ricketts himself made statements to representatives of the Jamaican consulate that led to the delay in issuance of a travel document in this case, and (5) there is no evidence to support a conclusion that no document will be issued for Ricketts within the reasonably foreseeable future. Thus, there is no factual basis upon which this Court can make a finding that there is no significant likelihood of Ricketts's removal in the reasonably foreseeable future. Ricketts has not met his burden of proof. Assuming that a travel document is issued for Ricketts's removal to Jamaica in the reasonably foreseeable future as expected, Ricketts will be released from DHS custody by his removal from the United States.

Further, there is an additional ground for the denial of Ricketts' motion for summary judgment. Petitioner Ricketts has failed to provide accurate information and documents needed to complete his application for a travel document to Jamaica, as set forth in the Warning for Failure to Depart, dated January 3, 2008. Exhibit A, pp. 11-13. Thus, Ricketts has failed to cooperate with his removal as required by statute. 8 U.S.C. § 1231(a)(1)(C). Such failure to cooperate with removal efforts tolls the removal period. 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."). See also 8 C.F.R. § 241.13(e)(2)[5]; Abimbola v. Ridge, 2005 WL

---

[5] This regulation provides in relevant part:

   (2) Lack of compliance, failure to cooperate. The HQPDU shall first determine if the alien has failed to make reasonable efforts to comply with the removal order, has failed to cooperate fully in effecting removal, or has obstructed or hampered the removal process. If so, the HQPDU shall so advise the alien in writing, with a copy to counsel of record by regular mail. The HQPDU shall advise the alien of efforts he or she needs to make in order to assist in securing travel documents for return to his or her country of origin or a third country, as well as the consequences of failure to make such efforts or to cooperate, including the provisions of section 243(a) of the Act. The Service shall not be obligated to conduct a further consideration of the alien's request for release until the alien has responded to

588769 *2 (D. Conn. 2005)("a self-inflicted wound cannot be grounds for a Zadvydas claim").

Thus, Ricketts's continued detention in DHS custody is pursuant to statutory authority. The immigration proceedings and custody reviews here have been in compliance with <u>Zadvydas</u> and the immigration regulations. In addition, Ricketts has alleged no basis for a finding that the respondents have violated his constitutional rights. Consequently, there is neither a factual nor a legal basis to support a conclusion that Ricketts is entitled to release at this time, or to conclude that Ricketts cannot be removed to Jamaica pursuant to the order of deportation. The Court should deny Ricketts's motion for summary judgment, and enter judgment in favor of the respondents.

---

the HQPDU and has established his or her compliance with the statutory requirements.

## IV. CONCLUSION

Respondents respectfully request that this Court deny petitioner Ricketts's motion for summary judgment, and based upon the proceedings had herein, enter an order denying the petition for writ of habeas corpus.

**DATED:** Buffalo, New York, January 25, 2008.

Respectfully submitted,

TERRANCE P. FLYNN
United States Attorney

BY: S/GAIL Y. MITCHELL
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 4202
(716) 843-5700, ext. 833
Gail.Y.Mitchell@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

Junior M. Ricketts,
A27-024-434,

                              Petitioner,

v.

Charles Mule, Facilities Director,
Buffalo Federal Detention Facility;        07-CV-0138-Sr
David Venturella, Director,
Post-Order Detention Unit,
Bureau of Immigration and Customs
Enforcement; Peter J. Smith,
District Director, U.S. Citizenship
and Immigration Services; Alberto
Gonzales, Attorney General of the
United States,

                              Respondents.

_____


### CERTIFICATE OF SERVICE BY MAIL

        I hereby certify that on January 25, 2008, I electronically filed the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO THE PETITIONER'S MOTION FOR SUMMARY JUDGMENT WITH AFFIDAVIT OF DONALD F. VACCARO AND EXHIBIT A**, with the Clerk of the District Court using its CM/ECF system.

        I hereby certify that on January 25, 2008, I mailed the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION WITH AFFIDAVIT OF DONALD F. VACCARO AND EXHIBIT A** by the United States Postal Service, to the following non-CM/ECF participant:

                Junior M. Ricketts
                A27-024-434
                Buffalo Federal Detention Facility
                4250 Federal Drive
                Batavia, New York 14020


                                S/DIANE E. CARLSEN
                                Legal Assistant